**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 95-20720**
_____

**TERRY WASHINGTON,**

**Petitioner-Appellant,**

**versus**

**GARY JOHNSON, DIRECTOR,**
**TEXAS DEPARTMENT OF CRIMINAL JUSTICE,**
**INSTITUTIONAL DIVISION,**

**Respondent-Appellee.**

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

July 25, 1996

Before GARWOOD, JONES, EMILIO M. GARZA, Circuit Judges

EDITH H. JONES, Circuit Judge:

Terry Washington was convicted of capital murder and sentenced to death for the murder of Beatrice Huling. With all direct appeals and collateral state reviews exhausted, Washington now seeks federal habeas relief. Following an evidentiary hearing, the district court denied Washington's application for writ of habeas corpus and refused to grant a certificate of probable cause for appeal. Washington seeks from this court a certificate of probable cause, based _inter alia_ on the contentions that he was incompetent to stand trial and that his counsel was ineffective.

Because Washington has made a substantial showing of the denial of a federal right with respect to the ineffectiveness claim, this court grants CPC but, after briefing and oral argument, has concluded that all of his claims lack merit.

## I. BACKGROUND

Beatrice Huling and Terry Washington worked at Julie's Place, a restaurant in College Station, Texas. Huling was the restaurant's night manager, and Washington worked as a dishwasher.[1] As part of her duties, Huling would count the night's receipts at the close of business, place cash in the register for the next day, deposit the surplus cash in the office safe, wait for the dishwasher to finish cleaning, set the security alarm, and lock the restaurant.

During the evening of January 14, 1987, Huling, Tuan Nguyen, Kim Tarr, and Washington were working together at Julie's Place. When Nguyen and Tarr left the restaurant at 1:00 a.m., Huling had completed her duties and was waiting for Washington to finish. Tarr recalled that Huling locked the back door behind them as they left the restaurant.

At 2:30 a.m. that same morning, Michael Jennings was in the parking lot next to Julie's Place. He heard an object hit the ground and went to investigate. Jennings found a purse and immediately called the police. The police arrived shortly

---

[1] These facts are summarized from the unpublished opinion affirming the conviction. *Washington v. State*, No. 69,937 (Tex. Crim. App. Dec. 23, 1992), *cert. denied*, 508 U.S. 927, 113 S. Ct. 2388 (1993).

2

thereafter and found Beatrice Huling's name and address in the purse and her car in the parking lot. The restaurant was closed and locked. The police ultimately entered the restaurant and discovered Huling's dead body ten to fifteen feet from the back door, lying in a pool of blood, with her head next to the base of the office safe. She had multiple stab wounds.

The investigation of the crime scene and the autopsy showed that Huling's hands had been tied with apron strings and that she had suffered eighty-five stab wounds, seven of which were fatal. The medical examiner testified at trial that the murder weapon had a five-and-a-half inch blade and that he believed it took Huling ten to fifteen minutes to die. The investigation further found no signs of forced entry into the restaurant, and that $628.00 had been stolen.

The evidence at trial overwhelmingly implicated Washington as the murderer. The State produced evidence linking Washington's boots to an impression made in a pool of Huling's blood. Willie Hemphill, Washington's neighbor, testified that on January 15 he went with Washington to buy some beer and noticed Washington had a lot of money. Additionally, Hemphill saw Washington with a hunting knife which had a blade consistent with the type of wounds inflicted upon Huling. Maud Swanson also saw Washington on January 15 and testified that he had a lot of money in his billfold when he took it out, and that when she asked him about the murder at the restaurant, Washington said "to hell with

3

Bea, or something like that." Scott Milton, the manager of the restaurant, testified that when Washington picked up his paycheck on the day of the murder he told Milton, "The police are hassling me about this, but I'm too smart for them." Billy and Mary Sandles testified that they heard Washington say, "I killed the bitch." A teller at a local bank testified that sometime within a week of the murder, Washington changed $450.00 of small bills and coins for larger bills. An employee of J&J Bail Bond testified that shortly after the murder, Washington paid $468.00 in cash for a bond relating to traffic citations, paying with three hundred dollar bills and the rest in twenties and change.

The jury found Washington guilty of the capital offense of intentional murder during the course of a robbery. Following a separate punishment hearing, the jury affirmatively answered two special issues submitted pursuant to the Texas Criminal Code. In accordance with Texas law, the trial court imposed a death sentence

Washington's conviction was affirmed by the Texas Court of Criminal Appeals. *Washington v. State*, No. 69,937 (Tex. Crim. App. Dec. 23, 1992), *cert. denied, Washington v. Texas*, 508 U.S. 927, 113 S. Ct. 2388 (1993). The trial court then issued a warrant scheduling Washington's execution for June 17, 1993. On May 28, 1993, Washington sought a stay of execution in order to allow time to prepare a state application for writ of habeas corpus. The motion to stay the execution was denied on June 8, 1993. On June 14, 1993, Washington filed his state application for writ of habeas

4

corpus. The State filed its answer the following day. On June 15, 1993, an evidentiary hearing was held before the same judge which presided at Washington's trial to consider the merits of Washington's habeas claims. The trial court entered findings of fact and conclusions of law early the next morning recommending that the relief sought be denied. *Ex Parte Washington*, No. 17,726-361 (361st Dist. Ct., Brazos County, Tex., June 16, 1993). Based on these findings and conclusions, the Texas Court of Criminal Appeals denied Washington's application for a writ of habeas corpus. *Ex Parte Washington*, No. 24,922-01 (Tex. Crim. App. June 16, 1993).

Following the decision of the Texas Court of Criminal Appeals, Washington filed a motion for stay of execution and an application for habeas relief in federal district court. The district court entered a stay and referred the case to a magistrate judge. The magistrate judge issued a memorandum opinion recommending that the relief sought be denied. The district court, however, found that material facts had not been adequately developed at the state habeas proceedings as to three of Washington's thirteen claims. The court ordered an evidentiary hearing as to these claims which concerned Washington's competency to stand trial, the trial court's failure to order a competency hearing, and ineffective assistance of counsel. As for Washington's remaining claims, the district court concluded they were without merit and would be dismissed at the time of final

5

judgment.  Based on the evidentiary hearing, the district court entered findings of fact and conclusions of law, denied relief on the three claims not adjudicated in its previous order, entered final judgment denying Washington's habeas petition, and denied a certificate of probable cause and vacated the stay of execution. *Washington v. Scott*, No. H-93-1792 (S.D. Tex. July 25, 1995); *Washington v. Scott*, No. H-93-1792 (S.D. Tex. Aug. 10, 1995).

## II. DISCUSSION

This court lacks jurisdiction to hear Petitioner's appeal unless a certificate of probable cause is first granted.  *Black v. Collins*, 962 F.2d 394, 398 (5th Cir. 1992), *cert. denied*, 504 U.S. 992, 112 S. Ct. 2983 (1992).  To obtain a certificate of probable cause, Petitioner must "make a substantial showing of the denial of a federal right." *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S. Ct. 3383, 3394 (1983)(internal quotations and citations omitted). This requires that Petitioner "demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further." *Id*. at 893 n.4, 103 S. Ct. at 3394-95 n.4 (emphasis in original)(internal quotations and citations omitted).  The nature of the penalty in a capital case is a "proper consideration in determining whether to issue a certificate of probable cause, but the severity of the penalty does not in itself suffice to warrant the automatic issuing of a certificate."  *Id*. at 893, 103 S. Ct. at 3394-95.

6

Washington's application for certificate of probable cause and writ of habeas corpus raises five issues. First, Washington contends the district court applied an incorrect legal standard in evaluating his mental competency claim. Second, Washington argues the district court erred in finding him competent to stand trial. Third, Washington claims he received ineffective assistance of trial counsel. Fourth, Washington contends the prosecutor improperly exercised a peremptory challenge to strike a black woman from the jury. Last, Washington argues his conviction and death sentence were obtained as a result of purposeful racial discrimination. Each of Washington's claims requires discussion.

## A. Mental Competency

It is well settled that due process prohibits prosecution of a defendant who is not competent to stand trial. *Cooper v. Oklahoma*, ___ U.S. ___, 116 S. Ct. 1373, 1377 (1996); *Bouchillon v. Collins*, 907 F.2d 589, 592 (5th Cir. 1990). The test for determining competency is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings." *Dusky v. United States*, 362 U.S. 402, 403, 80 S. Ct. 788, 789 (1960); *see Bouchillon*, 907 F.2d at 592. Habeas petitioners claiming incompetency bear a "threshold burden of proof which must be satisfied before the habeas court has a duty to investigate the constitutional challenge further." *Bruce v. Estelle*, 536 F.2d 1051, 1059 (5th Cir. 1976),

7

*cert. denied*, 429 U.S. 1053, 97 S. Ct. 767 (1977); *see Enriquez v. Procunier*, 752 F.2d 111, 114 (5th Cir. 1984)*, cert. denied*, 471 U.S. 1126, 105 S. Ct. 2658 (1985). This requires a showing that the facts are "sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel during trial." *Bruce*, 536 F.2d at 1058-59 (*quoting Bruce v. Estelle*, 483 F.2d 1031, 1043 (5th Cir. 1973), *cert. denied*, 429 U.S. 1053, 97 S. Ct. 767 (1977)). "Once petitioner has come forward with enough probative evidence to raise a substantial doubt as to competency, . . . [h]e must then go further and prove the fact of incompetency, at least by a preponderance of the evidence." *Bruce*, 536 F.2d at 1059; *see Bouchillon*, 907 F.2d at 592.

Petitioner asserts that the district court confused the threshold burden required of habeas petitioners with the requirement that incompetency be proven by a preponderance of evidence and thereby incorrectly applied a heightened standard of proof. We disagree.

In setting forth the governing standards, the district court stated:

> In the Fifth Circuit, on federal habeas review, Petitioner has the burden of proving by a preponderance of the evidence that he was incompetent at the time of his trial. Petitioner on a collateral attack has a heavy burden to present facts that positively, unequivocally, and clearly generate a real, substantial and legitimate doubt as to the mental capacity of the defendant to stand trial.

8

*Washington v. Scott*, No. H-93-1792 at 11-12 (S.D. Tex. July 25, 1995)(internal citations and quotations omitted).  The district court then found that Petitioner had

> failed to carry his burden and that the preponderance of the evidence supports a finding that Petitioner was competent to stand trial in 1987.

*Id.* at 12*.*  The court further found that

> [t]here was evidence presented that Washington suffers from organic brain damage and was abused and neglected by his family during childhood.  This evidence, nevertheless, in light of all the rest, failed to persuade the court by a preponderance that [his] problems impaired him to the extent of being incompetent to stand trial.

*Id*. at 3.

The district court's opinion properly recognizes both Petitioner's threshold burden to create a doubt warranting further examination in a habeas proceeding and the preponderance standard required to entitle Petitioner to relief.[2]  The district court clearly applied these standards in the correct sequence and concluded explicitly:  ". . . Petitioner was competent to stand trial in 1987."  *Id.* at 12.[3]

---

[2]	In *Cooper v. Oklahoma*, __ U.S. __, 116 S. Ct. 1373 (1996), the Supreme Court held unconstitutional an Oklahoma statute requiring a criminal defendant to prove his competency by clear and convincing evidence.  Petitioner contends *Cooper* requires reversal of his conviction because the district court imposed a heightened burden of proof.  As discussed *supra*, the district court properly applied the appropriate preponderance standard.  No heightened burden was required of Petitioner.  *Cooper*, therefore, does not apply to the facts of this case.

Petitioner also contends that although current Fifth Circuit law places the burden of proof on him to establish incompetency, there are sound reasons why the State should bear the burden. *See Bouchillon v. Collins*, 907 F.2d 589, 592 n.6 (5th Cir. 1990). Demands of finality and comity support this court's decisions to require of Petitioner the same burden of proof in retrospective

Washington also contends the district court erred in finding him mentally competent. Specifically, Petitioner argues that his mental retardation, organic brain damage, and abused childhood rendered him incompetent to stand trial.

The question of competency is treated in our circuit as a mixed question of law and fact. *Wheat v. Thigpen*, 793 F.2d 621, 631 (5th Cir. 1986), *cert. denied*, 480 U.S. 930, 107 S. Ct. 1566 (1987); *see United States v. Birdsell*, 775 F.2d 645, 648 (5th Cir. 1985), *cert. denied*, 476 U.S. 1119, 106 S. Ct. 1979 (1986). Whether a Petitioner suffers from a mental disorder or incapacitating mental illness is a question of fact reviewed under the clearly erroneous standard. *Lokos v. Capps*, 625 F.2d 1258, 1267 (5th Cir. 1980); *see Wheat*, 793 F.2d at 631; *Bruce*, 536 F.2d at 1059. However, we take a "hard look" at the ultimate competency finding. *Lokos*, 625 F.2d at 1267; *see W*heat, 793 F.2d at 631; *Bruce*, 536 F.2d at 1059-60.[4]

_____

federal competency hearings as he must bear on any other habeas issue. *Bruce v. Estelle*, 536 F.2d at 1058-59. In any event, the district court's unhesitating conclusion that Petitioner was competent in fact to stand trial in 1987 demonstrates that a contrary allocation of burden of proof would not have been outcome-determinative. The issue is therefore irrelevant to Washington's petition.

[4] There is some inconsistency in this circuit's review of competency determinations. Some earlier cases have treated a determination of competency as a finding of fact reviewable under a "clearly arbitrary or unwarranted standard." *United States v. Fratus*, 530 F.2d 644, 647 (5th Cir.), *cert. denied*, 429 U.S. 846, 97 S. Ct. 130 (1976); *see Bundy v. Digger*, 850 F.2d 1402, 1408 n.5 (11th Cir. 1988), *cert. denied*, 488 U.S. 1034, 109 S. Ct. 849 (1989)(noting inconsistency and citing cases). More recent cases, however, have viewed competency as a mixed question of law and fact with the aforementioned standard of review. *Wheat*, 793 F.2d at 631; *Lokos*, 625 F.2d at 1267; *Bruce*, 536 F.2d at 1059-60. The Supreme Court has likewise been inconsistent on the issue of competency. *See Thompson v. Keohane*, __U.S.__, 116 S. Ct. 457, 464 (1995)(competency to stand trial classified as a factual issue within § 2254(d));

The issue of Petitioner's competency to stand trial was first raised in his state habeas application. Petitioner's evidence of incompetency included his school and parole records, records from the Texas Department of Protective and Regulatory Services, and the affidavit of Dr. Philip Murphy, a neuropsychologist who examined Petitioner and concluded that Petitioner's neurological defects, mental retardation, and delusional episodes prevented Petitioner from rationally and meaningfully participating in his trial proceedings. In contrast to Dr. Murphy, Washington's trial counsel, Tyler Moore, testified that in his opinion, Washington was able to understand the proceedings and rationally consult with him concerning the trial.

Although the federal court found that the state habeas proceeding was too hastily conducted, the state judge's observations are useful, because he presided over both the capital murder trial and the habeas case. *See, e.g. Buxton v. Lynaugh*, 879 F.2d 140, 146 (5th Cir. 1989), *cert. denied*, 497 U.S. 1032, 110 S.Ct. 3295 (1990) (since trial judge and habeas judge were the same person, state judge is ordinarily in a better position to assess the facts). The state court concluded that Washington was

---

*Maggio v. Fulford*, 462 U.S. 116, 118-19, 103 S. Ct. 2261, 2265 (1983)(White, J., concurring)("Our cases have treated the ultimate question whether a defendant is competent to stand trial as at least a mixed question of law and fact."); *Drope v. Missouri*, 420 U.S. 162, 174-75, 175 n.10, 95 S. Ct. 896, 905, 905 n.10 (1975)(court undertook its own analysis of the facts concerning competency to assure appropriate enforcement of a federal right). As we have applied an arguably stricter standard of review than Thompson suggests, the district court's findings would be affirmed regardless.

11

competent to stand trial. In substance, the state court found, Washington knew he was on trial for his life, was able to consult with trial counsel and assist with his defense, discussed with counsel the relevant facts and procedures of the trial, and asked relevant questions of trial counsel and understood counsel's explanations. Further, the court found Petitioner had a rational and factual understanding of the trial proceedings.

At the federal evidentiary hearing, testimony concerning Washington's competency was fully developed. Petitioner called five witnesses, Dr. Philip Murphy, a neuropsychologist, Dr. Denis Keyes, a specialist in mental retardation, Leona Maxey, Petitioner's mother, Tyler Moore, Petitioner's trial counsel, and Edward Mallet, a criminal defense attorney. The State called Dr. George Parker, a psychologist, and Rita Watkins and Larry Johnson, police officers who participated in interrogations of Petitioner.

Like the state court, the district court concluded that Washington was competent to stand trial in 1987. The district court found that although Washington was mildly retarded and suffered from organic brain damage and an abused childhood, he was verbal, cooperative, and able to concentrate for periods without difficulty. Additionally, the court found that at the time of trial, Washington knew he had been accused of murder and understood the roles of the district attorney, defense counsel, and the jury. Further, the court found Washington had a general comprehension of judicial procedure and that he interacted appropriately with his

12

attorney at trial. The district court explained in detail why she credited the State's witness Dr. Parker over Washington's experts. Without detracting from the scope of her analysis, we note her findings that Dr. Parker relied on more sources of data than did the other experts; conducted a near four-hour interview with Washington in which he directly questioned Washington on matters material to the issue of competency, unlike the other experts; and closely examined pertinent records from the trial and Washington's understanding of what occurred there. Also significant to the court was Dr. Parker's experience testifying for both the prosecution and defense, while the other experts always testified for the defense.

Petitioner contends that the federal court improperly relied on the testimony of Dr. Parker, the police officers, and his trial counsel and should instead have relied on his experts, who found him incompetent. This argument of course implies that the district court's findings erroneously weighed the credibility of the witnesses and misjudged their testimony. The record does not support this argument.

At the evidentiary hearing, both Dr. Murphy and Dr. Keyes testified that Washington was incompetent to stand trial. Their conclusions were based primarily on the results of a series of tests they administered to Petitioner during extended interviews. Neither doctor, however, discussed in detail with Washington the

13

events leading up to or at his trial. Both doctors spent the bulk of their interview time with Washington administering tests.

In contrast, Dr. Parker found Washington competent to stand trial. Dr. Parker's interview with Petitioner focused on the events leading up to and at Petitioner's trial. Dr. Parker testified that Washington described in detail the evidence presented at trial and the trial testimony relating to that evidence, and observed that no fingerprints or murder weapon were presented as evidence. Additionally, Dr. Parker testified that Washington described the role of the judge, district attorney, defense counsel, and the jury, and that when asked why he was in prison, Washington responded he was there for murder. Further, Dr. Parker interviewed three prison guards who had contact with Washington. In sum, these guards described Washington was "a little slow" and "low-key," but also social and competent.

Dr. Parker's finding of competency is reinforced by the testimony of Washington's trial counsel and two police officers who participated in interrogations of Washington. Trial counsel testified that he and Washington talked about the evidence and the trial, and that Petitioner made observations, comments, and suggestions, including providing information for an alibi defense. Additionally, trial counsel testified that he believed Washington had a factual understanding of the proceedings and that he was able to assist in his defense. The testimony of the interrogating officers further showed that Washington was able to answer

14

questions during the interrogations and that his answers made logical sense.

The record supports the decision of the district court. The district court properly credited the testimony of Dr. Parker, trial counsel, and the police officers. Petitioner has failed to establish incompetency by a preponderance of the evidence.

## B. Ineffective Assistance of Counsel

Washington contends he received ineffective assistance of counsel because of trial counsel's failure to investigate his mental health, and failure to develop evidence of his mental condition and family background at the punishment phase of trial. Both the state and district courts rejected Petitioner's claim of ineffective assistance of counsel. We likewise reject the claim.

A claim of ineffective assistance of counsel is governed by the familiar standards set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). To prevail on this claim, Petitioner must show both deficient performance by counsel, and prejudice to the defense as a result of the performance. *Id*. at 687, 104 S. Ct. at 2064. Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id*. at 688, 104 S. Ct. at 2064. Our review of counsel's performance is highly deferential, with a strong presumption that performance was reasonable. *Id*. at 689, 104 S. Ct. at 2065. Deficient performance is prejudicial only upon a showing that but for trial counsel's errors, there is a reasonable probability that the ultimate result

15

would have been different and that confidence in the reliability of the verdict is undermined. *United States v. Faubion*, 19 F.3d 226, 228 (5th Cir. 1994).

Washington has shown neither deficient performance nor prejudice. His trial counsel Moore made a reasonable strategic decision not to investigate Washington's mental health by retaining a mental health expert or to present evidence of Washington's mental health and family background at the punishment stage of trial. This case was tried before the Supreme Court's *Penry* decision, and we have not previously held counsel incompetent for failing to anticipate *Penry*. Moore was aware of Petitioner's school records, juvenile records, adult probation records, low IQ, slow manner of speech, and deprived family background. Moore, however, was also aware that Washington was communicative, responsive, and helpful to the defense, and appeared to understand the nature of the proceedings. To develop mitigating evidence, counsel interviewed Washington's mother, girlfriend, younger brother and former teachers and retained an investigator to discover positive information concerning Washington. But Moore feared that evidence of Washington's troubled family and emotional problems could backfire at the punishment stage. For instance, counsel reasonably feared that obtaining a mental health expert to evaluate Washington could lead to the discovery of additional negative information concerning Petitioner, or result in repeated emphasis on Petitioner's past acts of violence, such as his sexual

16

assault on his younger brother and incidents in which Washington buried his younger brother in a grave, cut off the heads of puppies with a lawnmower, and treated his family violently. Moore's strategy was to portray the murder as an aberration rather than part of a pattern of random violence. Under these circumstances, the decisions made by Petitioner's trial counsel were reasonable.

Trial counsel's failure to investigate and present allegedly mitigating mental health and family background evidence was also not prejudicial. The federal district court's conclusion that Washington was in fact competent to stand trial dispels any claim of prejudice for failure to hire or request expert evaluation of that question.

More significantly, the evidence presented to the jury both at trial and at the punishment hearing persuades us that Petitioner has not met his burden of demonstrating a reasonable probability that, had the mitigating evidence been introduced, he would not have been sentenced to death. The jury had just convicted Washington of a brutal murder involving over eighty stab wounds. He showed no remorse for his actions. His past history showed he had sexually molested his younger brother, was violent toward family members and others, belligerent in jail, and had informed his parole officer before committing this crime that the next time he went to prison it would be for murder. Against this evidence, Washington's claimed physiological and social excuses for

17

his conduct are weak.  The jury's sentence was reliable; therefore, there was no prejudice.

**C. Batson Violation**

Washington contends the State improperly exercised a peremptory challenge to exclude veniremember Martha Patman, a black woman, from the jury panel in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712 (1986).  Additionally, Petitioner asserts that the trial court's finding of no discrimination in the State's challenge of Patman should not be afforded a presumption of correctness.  We disagree.

Under *Batson*, when a defendant makes a prima facie showing of racial discrimination in the state's use of peremptory challenges, the state must provide a race-neutral explanation for the challenge.  If the state provides a race-neutral explanation, the trial court must then decide whether the defendant has established purposeful discrimination. *Purkett v. Elem*, __ U.S. __, 115 S. Ct. 1769, 1770-71 (1995).  A trial court's contemporaneous ruling on issues of fact satisfies the hearing requirement of 28 U.S.C. § 2254(d). *Wainwright v. Witt*, 469 U.S. 412, 426-30, 105 S. Ct. 844, 854-55 (1985).  Accordingly, the trial court's finding as to the state's offered explanation will not be set aside unless the finding is "'not fairly supported by the record.'" *Purkett*, __ U.S. at __, 115 S. Ct. at 1771 (*quoting* 28 U.S.C. § 2254(d)(8)).

During voir dire, the prosecutor exercised a peremptory challenge and moved to strike Patman from the jury panel.

18

Petitioner objected and requested a reason for the challenge.  The

prosecutor stated:

> Your Honor, the controlling reason was not necessarily
> the words that she said, but the way she carried herself,
> the way in -- the manner in which she answered those
> questions.  That is what I perceive to be a very strict,
> a very, almost to the point of obstinate in the
> deliberateness of her carriage, which I believe would be
> contrary to what the State is looking for in a juror,
> that is someone that can deliberate with the other eleven
> toward reaching a verdict.
>
> I found her independence to be a little too far on
> the strong side of independent and rigidity in her
> opinions.  And sometimes I thought those opinions were
> expressed in a manner of almost being, as I said earlier,
> obstinate or angry in defense of her feelings and
> thoughts.  And it's based on that attitude that we felt
> like she will not fit into our perception of what the
> jury we're looking for should consist of.  That is the
> overwhelming concern the State has.

Tr. 3060-61.  Following the prosecutor's response, the trial court

found that the challenge of Patman was not based upon race. *Id*. at

3061, 3063.

The prosecutor's response is race-neutral, and Petitioner

has failed to show purposeful discrimination. The record fairly

supports the trial court's finding of no discrimination.  We defer

to the trial court's evaluation of the prosecutor's explanation for

the challenge of Patman. *See Troupe v. Groose*, 72 F.3d 75, 76 (8th

Cir. 1995).  Petitioner has failed to establish a *Batson* violation.

**D. Purposeful Racial Discrimination**

Petitioner finally contends his conviction and death

sentence were obtained as a result of purposeful racial

discrimination.  Petitioner further argues he was not given a full

19

and fair hearing in his state habeas action, and that the district court erred in not holding an evidentiary hearing as to the issue of racial discrimination.  These contentions are meritless.

In his state petition for habeas relief, Petitioner raised the claim of purposeful racial discrimination.  The State responded with an affidavit of Bill Turner, the Brazos County district attorney, who made the decision to charge Washington with capital murder.  Turner affirmed that race does not play a role in charging decisions, and that in Washington's case, capital murder and the death penalty were sought because of the nature of the murder, committed in the course of a robbery, and because of Washington's past violence and statements warning of possible future violence.  Additionally, the affidavit set forth the capital murder cases in which Turner had been involved and the sentences imposed.  Washington, though afforded the opportunity to cross examine Turner at the state habeas hearing on the contents of the affidavit, declined to question him.  Washington also submitted the affidavit of Kent Tedin, a professor at the University of Houston, who concluded that based on statistical probabilities, it was unlikely that there was a small number of blacks in the jury pool due to chance.

The state court concluded that

> [t]he decision to charge Applicant with capital murder, and the decision to seek the death penalty were not racially motivated.

*Ex Parte Washington*, No. 17,726-361 (361st Dist. Ct., Brazos County, Tex., June 16, 1993). Further, the court found

> [t]here is no evidence that race is a factor upon which the Brazos County District Attorney's office bases the decision to seek or not to seek the death penalty, or any other decision in the prosecution of any criminal case. To the contrary, race is not a factor that is considered by the Brazos County District Attorney's Office when making any decision on how to proceed in a case.

*Id.*

The decision of the state court is supported by the record and is afforded a presumption of correctness. 28 U.S.C. § 2254. Petitioner has failed to establish a claim of purposeful racial discrimination. *McCleskey v. Kemp*, 481 U.S. 279, 292-93, 107 S. Ct. 1756, 1767 (1987). The district court did not err in rejecting this claim without an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, the district court's denial of federal habeas relief is **AFFIRMED**.

21