UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-40240
_____


WILLIAM HAMILTON LITTLE,

Petitioner-Appellant,

v.

GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent-Appellee,

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

December 10, 1998

Before JONES, SMITH, and STEWART, Circuit Judges.

EDITH H. JONES, Circuit Judge:

William Hamilton Little was tried and convicted of
capital murder by a Texas jury on April 5, 1985. Having exhausted
his state court remedies, Little unsuccessfully sought federal
habeas relief in the district court pursuant to 28 U.S.C. § 2254.
Little's primary contention in this petition, among several
asserted, concerns the trial court's failure to introduce the
"confession" of another man who claimed to have committed the
murder to which Little also confessed. Finding no basis for the

issuance of a certificate of probable cause ("CPC"), this court denies Little's 28 U.S.C. § 2253 motion.

## I.    INTRODUCTION

In the early morning hours of December 3, 1983, Marilyn Peter was sexually assaulted, strangled, and brutally stabbed at her residence in Liberty County, Texas.  That same morning, a man meeting Little's general description was seen in the doorway of Peter's home.

Later that day, when appliance repairmen came to Peter's home to install her clothes dryer, they found blood on the doorjamb and heard a baby crying.  The repairmen entered the home to find Peter's two-year-old child crying on the kitchen counter.  The kitchen and living room were covered with blood.  Marilyn Peter lay dead in the living room, her body ravaged by multiple stab wounds.

Two men confessed to the murder of Marilyn Peter.  On December 4, 1983, Michael Raymond Thomas confessed to the murder while interviewing with Officers John Stapleton and Robert Dunn.  On December 6, 1983, following his arrest on a parole violation, Little also confessed to the murder.  The two were indicted separately on February 8, 1984.

### A.    Little's Trial

The indictment against Thomas was ultimately dismissed, and Little stood trial for the slaying.  During the course of his trial, Little's counsel offered Thomas's confession into evidence for "state of mind," but not for the truth of the matter asserted.

The trial judge rejected the proffer as hearsay. Near the close of Little's case-in-chief, the Thomas confession was offered again. During a hearing on the admissibility of the confession, the trial court heard evidence bearing on the reliability of the confession. Although Thomas was called to testify, he invoked his Fifth Amendment rights. At the close of the hearing, the trial court sustained the State's hearsay objection again.

Two other events that occurred during Little's trial are germane to this appeal. First, the prosecutor made several allegedly improper statements during the course of his closing argument.[1] Little's trial counsel chose not to object to the statements. Second, Dr. James Grigson testified during the sentencing portion of Little's trial. While Little's trial counsel did cross-examine Dr. Grigson, no rebuttal psychiatric testimony was offered.

B.  *Little's Direct and Collateral Attacks*

Little was convicted of the murder of Marilyn Peter and sentenced to death. On direct appeal, Little challenged several aspects of the voir dire, alleged the evidence was insufficient to support his conviction, and maintained that his confession and certain other evidence were obtained in violation of his constitutional rights. See Little v. State, 758 S.W.2d 551, 552

---

[1]     Little cites three "improper" comments made by the prosecution to the jury: (1) that the prosecutor, personally, did not believe Little's self-defense claims, (2) that the jury should "trust" the trial judge's ruling regarding the voluntariness of Little's confession, and (3) that Little had attempted to rape another woman on a previous occasion -- a material misstatement.

(Tex. Crim. App. 1988).[2]  Little's conviction and sentence were affirmed.  See id. at 567.

In his state habeas petition, Little finally asserted many of the arguments he now presses upon this court.  Little alleged, inter alia, that Thomas's confession was improperly excluded, that the State suppressed or destroyed exculpatory evidence, that the performance of Little's trial counsel was deficient, and that Dr. Grigson's testimony was improperly admitted.  Adopting the voluminous findings of the state district court, the Texas Court of Criminal Appeals denied Little's petition.

*C.    Little's 28 U.S.C. § 2254 Petition*

In 1989, Little filed the federal habeas petition underlying the present appeal.  Following an evidentiary hearing covering the reliability of Thomas's confession and certain of Little's ineffective assistance claims, the magistrate judge entered findings of fact, conclusions of law, and a recommendation rejecting each of the petitioner's claims.  The district court adopted the report and recommendation and denied Little's motion for a CPC.  Pursuant to 28 U.S.C. § 2253(c), Little now requests that this court grant his application for a CPC and review his petition on the merits.

---

[2]    On direct appeal, Little did not challenge the exclusion of Thomas's confession, did not allege ineffective assistance of trial counsel, did not claim that prosecutors had violated Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963), and did not argue that the admission of Dr. Grigson's testimony constituted a violation of the Eighth and Fourteenth Amendments.

## II.  ANALYSIS AND DISCUSSION

### A.  *Standard for CPC Issuance*

"In an appeal from a request for habeas relief, we review a district court's findings of fact for clear error and issues of law <u>de</u> <u>novo</u>."  <u>Moody v. Johnson</u>, 139 F.3d 477, 480 (5th Cir. 1998).

Because Little's habeas request predates passage of the Antiterrorism and Effective Death Penalty Act, the issuance of a CPC is a jurisdictional prerequisite to appellate review of his habeas petition.  <u>See</u> <u>Washington v. Johnson</u>, 90 F.3d 945, 949 (5th Cir. 1996); <u>see</u> <u>also</u> Fed. R. App. P. 22(b).  To obtain a CPC, a petitioner must "make a substantial showing of the denial of a federal right."  <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394 (1983) (internal quotations and citations omitted).  A petitioner can meet this burden by demonstrating that "the issues [presented] are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further."  <u>Id.</u> at 893 n.4, 103 S.Ct. at 3394-95 n.4 (internal quotations, emphasis, and citations omitted).  The nature of the penalty in a capital case is a "proper consideration in determining whether to issue a [CPC], but the severity of the penalty does not in itself suffice to warrant the automatic issuing of a certificate."  <u>Id.</u> at 893, 103 S.Ct. at 3394-95.  With these standards in mind, the court will now address each of Little's contentions in turn.

*B.    Improper Exclusion of Thomas's Confession*

Little maintains that the trial court's exclusion of Thomas's confession violated the due process clause of the Fourteenth Amendment.  Little's due process claim rests on two separate, but related, theories.  First, Little contends that the trial court's failure to conduct an evidentiary hearing regarding the reliability of Thomas's confession violated due process, citing Chambers v. Mississippi, 410 U.S. 284, 93 S. Ct. 1038 (1973), and Green v. Georgia, 442 U.S. 95, 99 S. Ct. 2150 (1979).  Next, Little argues that the exclusion of the Thomas confession violated due process.  Both arguments prove unavailing.

Little has procedurally defaulted on his first due process theory.  When the ground upon which the petitioner relies for habeas relief was not exhausted in state court and state procedural rules would bar subsequent presentation of the argument, this court may not consider the claim absent "cause" and "prejudice", neither of which exceptions is argued here.  See Muniz v. Johnson, 132 F.3d 214, 221 (5th Cir. 1998); Nobles v. Johnson, 127 F.3d 409, 422-23 (5th Cir. 1997).  The issue of reliability of Thomas's confession was not raised at trial.  Further, in state habeas proceedings, Little did not argue that the trial court's failure to conduct an evidentiary hearing violated due process.  He asserted instead only that the exclusion of the confession amounted to an unconstitutional deprivation of due process.  Therefore, under Tex. Code Crim. P. Ann. art. 11.071 § 5(a), Little would not

be permitted to pursue habeas relief on this theory in a successive state petition. Absent proof of cause and prejudice or a miscarriage of justice[3] -- showings the petitioner does not make -- Little is barred procedurally from pursuing his argument that the trial court should have conducted a hearing regarding the reliability of Thomas's confession.

Even if Little's claim regarding the alleged lack of an evidentiary hearing were not procedurally barred, Chambers and Green neither embody the constitutionally mandated hearing proposed by Little nor demand the admission of Thomas's confession. In Montana v. Egelhoff, the Supreme Court explained,

> [T]he holding of Chambers -- if one can be discerned from such a fact-intensive case -- is certainly not that a defendant is denied "a fair opportunity to defend against the State's accusations" whenever "critical evidence" favorable to him is excluded, but rather that erroneous evidentiary rulings can, in combination, rise to the level of a due process violation.

518 U.S. 37, 53, 116 S. Ct. 2013, 2022 (1996). Indeed, even the Chambers Court placed limits on the consequences of its holding:

> In reaching this judgment, we establish no new principles of constitutional law. Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that under the facts and circumstances of

---

[3] See Gray v. Netherland, 518 U.S. 152, 162, 116 S. Ct. 2074, 2080 (1996); Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."); see also Calderon v. Thompson, --- U.S. ---, ---, 118 S. Ct. 1489, 1503 (1998) (describing miscarriage of justice analysis).

> this case the rulings of the trial court deprived
> Chambers of a fair trial.

410 U.S. at 302-03, 93 S. Ct. at 1049 (emphasis added). Thus, as this court has twice recognized, <u>Chambers</u> and <u>Green</u> stand for the limited proposition that "certain egregious evidentiary errors may be redressed by the due process clause." <u>Barefoot v. Estelle</u>, 697 F.2d 593, 597 (5th Cir. 1983) ("We think that <u>Green</u> is limited to its facts . . . ."); <u>see</u> <u>also</u> <u>Maness v. Wainwright</u>, 512 F.2d 88, 91 (5th Cir. 1975) (recognizing factual limits on <u>Chambers</u> holding).

Even if <u>Chambers</u> and <u>Green</u> provide a rule of decision relevant to this case, that rule turns on the existence of a confession that bears "persuasive assurances of trustworthiness." <u>Chambers</u>, 93 S.Ct. at 1047, 1049. Thomas's confession provided no such assurance. First, contrary to the petitioner's assertions, the state trial court did conduct a limited evidentiary hearing on the admissibility of Thomas's confession. During the course of this testimony, the court was made aware of Thomas's confinement in a mental institution following his confession, his subsequent confession to the assassination of President John F. Kennedy, his denial of responsibility for the Peter murder under hypnosis, and the finding, by a jury, that Thomas was not competent to stand trial. The court also knew that the indictment of Thomas for capital murder had been dismissed on the state's motion. Moreover, aspects of Thomas's confession were inconsistent with the forensic

evidence.[4]  The trial court was able to observe Thomas's halting invocation of his Fifth Amendment privilege and consequent refusal to testify at Little's trial.  All of these factors support the trial court's hearsay exclusion of the Thomas confession[5] and critically distinguish the nature of Thomas's "confession" from the reliable confessions that are the linchpin of Chambers and Green.

C.    *Ineffective Assistance of Counsel*

A claim of ineffective assistance of counsel is governed by Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). To prevail on an ineffective assistance claim, a petitioner must show both deficient performance by counsel and prejudice to the defense as a result of the deficient performance.  See id. at 687, 104 S. Ct. at 2064.  Counsel's performance is deficient if it falls below an objective standard of reasonableness.  See id. at 688, 104 S. Ct. at 2064.  Our review of counsel's performance is highly deferential, with a strong presumption that the performance was reasonable.  See id. at 689, 104 S. Ct. at 2065.  Deficient performance is prejudicial only upon a showing that but for counsel's errors, there is a reasonable probability that the ultimate result would have been different and that confidence in

---

[4]    In particular, Thomas claimed that he sexually assaulted Peter after he killed her.  The bruising on the victim clearly established, however, that the sexual assault occurred prior to death.  Furthermore, the knife Thomas confessed to using was too short to inflict the wounds found on Peter's body.

[5]    Although the state habeas court and the district court both examined evidence not available to the trial court when making the reliability determination, this court need not examine this cumulative evidence in order to reject Little's due process claim.  Suffice to say, the newly examined forensic and other  evidence does not support Thomas's confession and, in fact, undermines Little's actual innocence argument.

the reliability of the verdict is undermined.  See United States v. Faubion, 19 F.3d 226, 228 (5th Cir. 1994).  The effectiveness of counsel is a mixed question of law and fact reviewed de novo by this court.  See Moody, 139 F.3d at 483.

Little makes several allegations of deficient performance by trial counsel which affected the ultimate result of his trial and sentencing.  First, Little maintains that counsel's failure to cite Chambers and Green at trial in support of the admission of Thomas's confession constituted ineffective assistance of counsel. Second, Little claims that Dr. Grigson was inadequately impeached by counsel during the sentencing phase of Little's trial. Moreover, Little argues that counsel's failure to offer rebuttal psychiatric testimony at sentencing prejudiced the ultimate outcome of the proceeding.  Last, Little contends that counsel's failure to object to allegedly improper closing arguments by the prosecutor amounted to ineffective assistance of counsel.

This court finds no merit in any of the petitioner's ineffective assistance claims.  Based on the prior determination regarding the propriety of the exclusion of Thomas's confession, no prejudice can arise from counsel's failure to cite Chambers or Green to the trial court.[6]  This court can find no fault in the district and state habeas courts' factual determination that Little's counsel "vigorously cross-examined" Dr. Grigson, a finding

---

[6]     Little's ineffective assistance claim on this ground is also procedurally barred based on his failure to assert the claim in state habeas proceedings.  See Muniz, 132 F.3d at 221; Nobles, 127 F.3d at 422-23.

adequately supported by the trial transcript. The failure of Little's trial counsel to object to allegedly improper remarks made by the prosecution during closing argument was not so prejudicial as to undermine confidence in the reliability of the verdict.[7] Similarly, counsel's decision not to request a psychiatric exam pursuant to Ake v. Oklahoma, 470 U.S. 68, 105 S. Ct. 1087 (1985), and offer rebuttal psychiatric testimony during sentencing constituted a reasonable trial strategy. See Williams v. Collins, 16 F.3d 626, 634 (5th Cir. 1994) (finding trial counsels' decision not to offer rebuttal psychiatric testimony during sentencing phase of trial reasonable).[8] Thus, Little has failed to illuminate any ineffective assistance claims that would necessitate the issuance of a CPC.

D. *Suppression or Destruction of Brady Evidence*

In Brady v. Maryland, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material

---

[7]    The remarks made by the prosecution were not such a "crucial, critical, [or] highly significant factor" that a reasonable probability existed that the verdict would have been different had the prosecution not made the statements. Lowery v. Estelle, 696 F.2d 333, 342 (5th Cir. 1983); see also Rogers v. Lynaugh, 848 F.2d 606, 609 (5th Cir. 1988) (discussing standard for habeas relief based on improper prosecution argument).

[8]    The mere failure to request a psychiatric exam, without offering the exam as evidence, cannot support Little's deficient performance claim. The only potential use of this strategy during the sentencing phase would be to bolster the cross-examination of the prosecution's psychiatric expert. Because this approach risks potential waiver of the defendant's Fifth Amendment rights, the refusal to adopt it is not an unreasonable trial strategy. See, e.g., Buchanan v. Kentucky, 483 U.S. 402, 422-23, 107 S. Ct. 2906, 2917-18 (1987). Moreover, the decision would not support an ineffective assistance claim absent proof that the lack of an exam, standing alone, prejudiced Little's defense. Little has neither argued nor supported these contentions, particularly since his counsel's cross-examination was not deficient.

either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S. Ct. at 1196-97. To establish a Brady claim, a habeas petitioner must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the petitioner, and (3) the evidence was material. See United States v. Ellender, 947 F.2d 748, 756 (5th Cir. 1991) (citations omitted). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (internal quotations omitted). However, "materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." Kyles v. Whitley, 514 U.S. 419, 434, 115 S. Ct. 1555, 1566 (1995). A court must examine the suppressed evidence collectively in a materiality inquiry; the allegedly suppressed evidence is not considered individually. See id. at 436, 115 S. Ct. at 1567.

Little maintains that the prosecution failed to disclose the knife Thomas confessed to using to murder Peter, bloody clothes seized from Thomas during the Peter investigation, the test results of a handprint found on a truck near Peter's home, and skin scrapings found beneath Peter's fingernails. Little also claims

that exculpatory evidence was allegedly lost or destroyed by the Liberty County Police Department.

Little's <u>Brady</u> claim is untenable. First, his factual assertions that evidence was suppressed were rejected by the state habeas court, and we are bound by that finding. The record indicates that Little's counsel received, prior to trial, Texas Department of Public Safety reports on several pieces of evidence Little now claims were withheld. Second, the reports fail to offer support for any of Little's exculpatory theories.[9] Moreover, the magistrate judge ordered additional testing on several available pieces of allegedly exculpatory evidence. As before, the new round of testing failed to uncover any evidence tending to exculpate Little or corroborate Thomas's confession.[10] Little's conclusory allegations regarding the alleged destruction of exculpatory material fail to show that the state, in bad faith, destroyed any evidence with knowledge of its exculpatory value. <u>See</u> <u>Arizona v. Youngblood</u>, 488 U.S. 51, 57-58, 109 S. Ct. 333, 337 (1988); <u>California v. Trombetta</u>, 467 U.S. 479, 486-91, 104 S. Ct. 2528, 2533-35 (1984). Accordingly, Little has failed to show that the

---

[9]     The Department of Public Safety testing showed that the "bloody" handprint on Peter's truck was not actually blood and that the blood on Thomas's knife was not human. Although the blood on Thomas's clothing did match Peter's type, Thomas and Peter had the same blood type, O-positive. Therefore, the presence of O-positive blood on Thomas's clothing would not have exculpated Little.

[10]     In fact, the results of a newly conducted DNA profile on sperm from the victim's rectal swab indicated that Little could not be excluded as a possible source. As the magistrate noted, "Based on these tests, the analysis, like the previous [Department of Public Safety] analysis, is either inconclusive or not favorable to the Petitioner."

prosecution suppressed potentially exculpatory evidence or that the evidence allegedly withheld would have had a material impact on any phase of Little's trial.

   E.   *Admission of Dr. Grigson's Testimony*

      In habeas actions, this court does not sit to review the mere admissibility of evidence under state law.   See Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991).  However, a state trial court's evidentiary rulings will mandate habeas relief when errors are so extreme that they constitute a denial of fundamental fairness.  See Evans v. Thigpen, 809 F.2d 239, 242 (5th Cir. 1987). Thus, only when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.   See Andrade v. McCotter, 805 F.2d 1190, 1193 (5th Cir. 1986).

      Dr. Grigson's testimony regarding Little's potential for future dangerousness, based on a hypothetical set of facts, was properly admitted by the trial court.   Little argues that the testimony of Dr. Grigson was so unreliable that its mere admission violated due process.   In Barefoot v. Estelle, the Supreme Court discussed the admission of psychiatric expert testimony during the sentencing phase of a capital trial. See 463 U.S. at 896-906, 103 S. Ct. at 3396-401.  The Barefoot Court addressed the same issues raised by Little regarding predictions of future dangerousness with respect to the testimony of Dr. Grigson -- the same expert that testified during Little's sentencing hearing.  Of particular note,

the Court considered the propriety of basing an expert opinion on a hypothetical question, see id. at 903-04, 103 S. Ct. at 3399-400, and the asserted accuracy of Dr. Grigson's prediction of future dangerousness, see id. at 904-05, 905 n.11, 103 S. Ct. at 3400-01, 3401 n.11.

Dismissing the petitioner's claim, the Barefoot Court reinforced the general admissibility of expert testimony buttressed against counsel's ability to cross-examine the purported expert and offer rebuttal expert testimony and the jury's ultimate determination of the appropriate weight to afford the testimony. See id. at 898-99, 103 S. Ct. at 3397. The petitioner attempts to distinguish Barefoot by attacking the reliability of Dr. Grigson's expert testimony and arguing the inadequacy of trial counsel's sentencing hearing strategy. These efforts prove fruitless. Dr. Grigson's testimony at Little's hearing was substantially similar to the offer approved by the Supreme Court in Barefoot. See id. at 905 n.11, 103 S. Ct. at 3401 n.11. Furthermore, the courts have previously found that the representation provided by Little's trial counsel was adequate, particularly with respect to Dr. Grigson's testimony at the sentencing hearing.[11] As such, Little's due process claim must fail.

## IV. CONCLUSION

---

[11] The state and federal habeas courts both agreed that counsel's cross-examination of Dr. Grigson was adequate and that his decision not to present psychiatric testimony was a reasonable trial strategy.

Finding the issues presented by the petitioner fail to meet the standards applicable for the issuance of a CPC, we deny the motion.

**DENIED.**