UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
No. 98-60551
GEORGE GUY DERDEN, III,

Petitioner-Appellee,

v.

EDWARD HARGETT; MIKE MOORE, Attorney General,
State of Mississippi,

Respondents-Appellants.

Appeal from the United States District Court
for the Northern District of Mississippi
(1:95-CV-43-D-D)
August 6, 1999

Before JONES and WIENER, Circuit Judges, and LITTLE,[*] District Judge.

EDITH H. JONES, Circuit Judge:[†]

The State of Mississippi appeals the district court's grant of habeas corpus relief to petitioner George Guy Derden. We reverse.

**BACKGROUND**

Derden was convicted by a Mississippi jury of attempted armed robbery and sentenced to serve a twenty year prison sentence. The government obtained his conviction in part by the cooperative testimony of an accomplice, Shirley Pennington. In exchange for her testimony against Derden, Pennington's plea agreement called for the state to recommend that she receive a ten year prison sentence for armed robbery. Prior to Derden's first trial, however, the agreement was modified, reducing the state's

---

[*]District Judge of the Western District of Louisiana, sitting by designation.

[†]Pursuant to 5th Cir. Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. Rule 47.5.4.

recommendation to eight years.  At Derden's second trial,[1] Derden's

counsel attacked Pennington's credibility by questioning her deal

with the government:

> Q:   Well, what is the agreement, [Ms. Pennington], that you
>      have now about being sentenced for all these robberies–
>
> A:   –I have an agreement with the State for no more than
>      eight years.
>
> Q:   You have an agreement for no more than eight years?
>
> A:   Right
>
> Q:   And how long have you had that agreement?
>
> A:   Last year.  We made the agreement last year.

On redirect, the prosecutor introduced a letter which set forth the

details of Pennington's plea agreement:

> Q:   Mrs. Pennington, I'm going to hand you what has been
>      marked now as State's in Evidence Number Six and direct
>      you into–to the second page, paragraph labeled one.  If
>      you would, read that first sentence there.
>
> A.   "The State of Mississippi will recommend to the Court
>      that Mrs. Pennington receive a ten-year sentence with the
>      Mississippi Department of Correction."
>
> Q:   Okay.  Now, that has been, as you understand it, reduced
>      to eight years; is that correct?
>
> A:   Yes, sir.
>
> Q:   Now, other than that everything else in that particular
>      plea bargain agreement is still in force and effect; is
>      that correct?
>
> A:   It is.

The prosecutor highlighted the fact that Pennington would serve

eight years during his closing arguments when he said, "Pennington

has not been convicted of anything yet.  She will be.  And she will

---

[1]Derden's first trial ended in a hung jury.

2

go to the penitentiary. . . . [She] is going to the Department of Corrections for eight years." The jury convicted Derden and the Mississippi Supreme Court affirmed his conviction on appeal. See Derden v. State, 575 So.2d 1003 (Miss. 1991) (unpublished opinion).

Ten months after Derden's trial and while his case was pending before the Mississippi Supreme Court, Pennington signed a plea agreement. Although the agreement still stated that the state would recommend an eight year sentence, it differed from the evidence presented at Derden's trial in one respect: it provided that the government would reduce the charge from armed robbery to robbery. At Pennington's sentencing, the State, pursuant to the plea agreement, recommended that she be sentenced to an eight year prison term. The court, however, decided to sentence her to ten years in prison, but suspended the prison term and sentenced her instead to five years probation.

Upon learning of Pennington's probation sentence, Derden filed a post-conviction application in the Mississippi Supreme Court arguing that Pennington knew when she testified at his trial that the state was going to reduce the charge against her; therefore, because the "real deal" was not disclosed, the jury could not properly assess her credibility in violation of Giglio v. United States. 405 U.S. 150, 92 S. Ct. 763 (1972). The Court denied Derden's application, holding that it was procedurally barred because Derden did not raise the Giglio claim on direct appeal. Derden then filed a federal habeas corpus petition, but the district court likewise rejected the claim because of

3

procedural default. On appeal, a panel of this court reversed, holding that Derden could not have raised his <u>Giglio</u> claim on direct appeal because he did not learn of Pennington's deal until after he was tried, convicted, and had filed his direct appeal with the Mississippi Supreme Court.[2] Therefore, this court remanded the case and gave the state an opportunity to show that "Derden knew or was properly chargeable with knowledge of the relevant facts at an earlier time when he could have taken meaningful steps to protect his rights."

On remand, the district court held that Derden had established a <u>Giglio</u> claim and granted a conditional writ of habeas corpus, releasing Derden unless he was retried in 120 days. The district court, however, stayed its order pending the outcome of this appeal. The state argues on appeal that Derden's claim is procedurally barred and that the district court erred in holding that Derden established a <u>Giglio</u> claim.

**DISCUSSION**

**1. Procedural Bar.**

Once again, the state argues that Derden's <u>Giglio</u> claim is procedurally barred because he did not raise the issue on his direct appeal. That issue, however, has already been resolved by this court. The prior panel's opinion stated that Derden's claim was not procedurally barred because

the facts giving rise to this claim were neither known by

---

[2]The district court and this court also rejected Derden's ineffective assistance of counsel claim. Thus, the only issue remaining on appeal is Derden's <u>Giglio</u> claim.

4

nor reasonably available to Derden until Pennington pleaded guilty to simple robbery, which occurred after he was tried and convicted and, in fact, even after he filed his direct appeal. If this is not the case--and nothing suggests it is not--Derden could not have possibly raised his Giglio claim on direct appeal.

In a footnote, this court gave the state an opportunity to show on remand that "Derden knew or was properly chargeable with knowledge of the relevant facts at an earlier time when he could have taken meaningful steps to protect his rights." The state has failed to make the necessary showing.

The state essentially argues that Derden knew or should have known of the deal with Pennington and is therefore procedurally barred from bringing his Giglio claim because the letter memorializing Pennington's plea agreement was introduced at trial and because Pennington pleaded guilty three days after Derden filed his direct appeal. These arguments, however, were presented to and rejected by the prior Fifth Circuit panel; thus, because the state has failed to introduce any new evidence or argument indicating that Derden knew or should have known of the relevant facts and could have protected himself, the law of the case doctrine prohibits our reexamination of the issue. See Free v. Abbott Labs., 164 F.3d 270, 272-73 (5th Cir. 1999).

## 2. Giglio claim.

The state next asserts that the district court erred in holding that Derden's right to due process was violated because the state did not disclose plea agreement information that it was required to produce under Giglio. We review the district court's factual findings for clear error and its legal determinations de

5

novo.  See Creel, 162 F.3d 385, 391 (5th Cir. 1998), cert. denied, __ U.S. __, 119 S. Ct. 2027 (1999).

Under Brady v. Maryland, the state has a duty to disclose evidence favorable to the accused that is material to guilt or punishment.  See 373 U.S. 83, 86-87, 83 S. Ct. 1194, 1196-97 (1963).  Giglio made clear that the Brady rule applies to the nondisclosure of evidence affecting the credibility of a witness if the reliability of the witness may be determinative of guilt or innocence.  See 405 U.S. at 154-55, 92 S. Ct. at 766.  A promise of leniency made to a key witness in return for his testimony is impeachment evidence to which a defendant is entitled.  See id.

In order to establish a Giglio claim, a habeas petitioner must show that 1) the state withheld evidence; 2) the evidence was favorable; and, 3) the evidence was material to the defense.  See Little v. Johnson, 162 F.3d 855, 861 (5th Cir. 1998), cert. denied, __ U.S. __, 119 S. Ct. 1768 (1999).  "'[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  Id. (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985)).  A petitioner demonstrates "reasonable probability" of a different result when the state's non-disclosure "undermines confidence in the outcome of the trial."  Bagley, 473 U.S. at 678, 105 S. Ct. at 3381.  "[W]hen the testimony of a witness who might have been impeached by the undisclosed evidence is strongly corroborated by additional evidence supporting a guilty verdict, the undisclosed evidence generally is not found

to be material . . . ." Wilson v. Whitley, 28 F.3d 433, 439 (5th Cir. 1994). "Similarly, when the undisclosed evidence is merely cumulative of other evidence, no Brady violation occurs." Spence v. Johnson, 80 F.3d 989, 995 (5th Cir. 1996).

In this case, we find that Pennington's trial testimony was not material because disclosure of the reduced charge in her plea agreement would not have made a different result reasonably probable. Pennington's testimony was corroborated by other evidence presented at Derden's trial that supports his guilty verdict. See id. Willie Sherrod, an accomplice to the attempted robbery, complemented Pennington's testimony and provided substantial independent evidence of Derden's guilt. See Creel, 162 F.3d at 392. Although Derden did not actually carry out the attempted robbery, both Pennington and Sherrod testified that Derden planned the robbery. Sherrod, who was an employee of Derden's, testified that Derden personally solicited his help, set the date and time for the robbery, and gave him a pistol to use. Both Pennington and Sherrod testified that Derden supplied the mace used during the robbery, and both gave similar testimony about various meetings with Derden before and after the attempted robbery.[3] In addition, the two witnesses gave nearly identical

---

[3]Both Pennington and Sherrod testified that after Derden solicited Sherrod and William Edwards, they met at Sherrod's residence to plan the robbery; both testified that after the attempted robbery was over, they drove to Derden's residence; both testified that Derden gave Edwards a shirt to cover his gunshot wounds; both testified that Derden told them to leave in case they were followed; and, both were present at Derden's residence days later when Derden informed them that their accomplice, James Ingram, was dead.

testimony regarding events surrounding the actual robbery.[4] Sherrod's trial testimony alone provides substantial independent evidence of Derden's guilt. Because Pennington's testimony is strongly corroborated by another key witness, the fact that she might have been further impeached by an undisclosed aspect of her plea agreement is not material. See Spence, 80 F.3d at 995; Wilson, 28 F.3d at 439.

Furthermore, the undisclosed evidence is immaterial because it is cumulative of other evidence impeaching Pennington. See Spence, 80 F.3d at 995. During Pennington's cross-examination, Derden's counsel attempted to discredit her by accusing her of withholding a secret agreement with the state in which she would not serve any prison time--an accusation she emphatically denied. On re-direct examination, the following colloquy occurred:

> Q: Now, Mrs.--Mrs. Pennington, you have been read or--and read some of the answers to your--to your testimony in a previous trial where you were asked about an agreement that you have with the State that you will not go to the penitentiary at all. What agreement like that do you have, Mrs. Pennington?
>
> A: I--I really don't understand. My agreement with the State is for me to testify and tell the truth, the whole truth, and nothing but the truth, and get no more than eight years . . . in a Mississippi Correction Center.

Had Derden known that the state was actually going to charge Pennington with robbery instead of armed robbery, his attempt to

---

[4] For instance, both testified that they drove to the motel twice before actually attempting to rob it; both testified that Sherrod and Edwards were hiding in the rear seat of Pennington's car; both testified that when the motel owner began shooting that Sherrod returned fire; and, both testified that after the robbery, Pennington picked up Sherrod and Edwards on the highway as they were fleeing the scene.

impeach her would have been cumulative.  His counsel had already spent much effort in attacking her eight year sentence.  Derden's goal was to show that her lenient sentence--not her formal charge--should give the jury reason to discredit her testimony.  Thus, the fact that the plea agreement erroneously listed her actual charge is not material evidence that would have changed the outcome of the trial.

### CONCLUSION

Because the state has offered no new evidence or arguments showing that Derden knew or should have known of the state's deal with Pennington, we will not disrupt the prior panel's conclusion that Derden's claim was not procedurally barred.  We find, however, that the district court erred in concluding that Derden has made a Giglio claim.  The state did not violate Giglio when it failed to disclose the reduced charge that Pennington plead guilt to because it was not material.  There was not a reasonable probability that, had the actual charge been disclosed, the result of the trial would have been different.  See Little, 162 F.3d at 861.  Furthermore, Pennington's testimony was strongly corroborated by independent evidence and the undisclosed evidence was cumulative of other impeachment evidence.  See Spence, 80 F.3d at 995.  We therefore reverse the judgment of the district court.

**REVERSED.**

9