**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 97-20581

KENNETH DWAYNE DUNN,

Petitioner-Appellant,

versus

GARY L. JOHNSON, DIRECTOR, TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

December 2, 1998

Before POLITZ, Chief Judge, KING and JONES, Circuit Judges.

POLITZ, Chief Judge:

Kenneth Dwayne Dunn, a Texas death row inmate, appeals the denial of his 28

U.S.C. § 2254 petition for habeas corpus. For the reasons assigned, we affirm.

## BACKGROUND

In 1980 Dunn was convicted of capital murder and sentenced to death for

shooting a bank employee during the commission of a bank robbery.[1] On April 8, 1987, Dunn's conviction was reversed by the Texas Court of Criminal Appeals because the record on appeal lacked a complete statement of facts.[2] Dunn was again convicted and sentenced to death in a second trial in 1988.

Prior to the first trial, the court ordered Dunn to undergo a psychiatric examination. He was examined by Dr. Charles Covert who concluded that Dunn was sane at the time of the offense and competent to stand trial. Robert Hunt and Reuben Guerrero were appointed to represent Dunn. While Dunn's appeal of the first trial was pending, he filed a malpractice suit against Hunt and Guerrero. That suit was dismissed as frivolous in 1985.

In 1987, prior to the second trial, Dunn requested that he be appointed co-counsel with Hunt and Guerrero. When the court informed Dunn that he had no right to hybrid representation, he insisted that he wanted to proceed *pro se*. After a lengthy colloquy, the court granted Dunn's motion for self-representation and appointed Hunt and Guerrero as standby counsel. Dunn objected to this appointment, claiming that Hunt and Guerrero had refused to argue the insanity defense at his first trial; the court

---

[1]For a full recitation of the facts of the offense, see **Dunn v. State**, 819 S.W.2d 510 (Tex.Crim.App. 1991) (en banc).

[2]**Dunn v. State**, 733 S.W.2d 212 (Tex.Crim.App. 1987) (en banc).

overruled this objection.

At a pretrial hearing ten days later, Dunn asked to have counsel appointed. The court granted the request and reappointed Hunt and Guerrero. Dunn again objected to their representation contending that Hunt and Guerrero "have refused in the past to cooperate with the defendant in presenting the defense he wishes to present," that he did not trust that Hunt had his best interests in mind because of an argument wherein Hunt said "to hell with you" and picked up an umbrella and ashtray as if to strike Dunn, and because he had filed a malpractice suit against Hunt and Guerrero after the first trial. The district court denied Dunn's request that Hunt and Guerrero be dismissed and that Jack Zimmerman and Percy Foreman be appointed in their place.

Approximately six months later, Dunn filed a motion for self-representation. After a hearing, the court granted the motion and reminded Dunn of the dangers and disadvantages of self-representation. Dunn proceeded to trial *pro se* with Hunt and Guerrero as standby counsel. He again was convicted of capital murder and sentenced to death, and the conviction and sentence were affirmed on direct appeal.[3]

Dunn petitioned for a writ of habeas corpus in state court. The trial court entered factual findings and legal conclusions, recommending that relief be denied, and the

---

[3]**Dunn v. State**, 819 S.W.2d 510 (Tex.Crim.App. 1991) (en banc), *cert. denied*, 506 U.S. 834 (1992).

3

Texas Court of Criminal Appeals denied the writ on the basis of the trial court's findings.[4]

Dunn then filed the instant federal habeas petition under 28 U.S.C. § 2254. The state answered and moved for summary judgment. The district court granted the motion and denied habeas relief. Dunn appealed and the district court issued a certificate of appealability on two of the issues raised.[5] He requested a COA from this court on the remaining issues; we granted same.[6]

---

[4]**Ex Parte Dunn**, No. 24, 263-01 (Tex.Crim.App. 1992).

[5]Dunn filed his habeas petition prior to the effective date of the AEDPA. His application for a COA should have been construed as an application for a certificate of probable cause. **Lindh v. Murphy**, 521 U.S. 320 (1997). Nevertheless, the standards for issuing a CPC and the AEDPA-required COA are identical. **See Lucas v. Johnson**, 132 F.3d 1069 (5th Cir. 1998), *cert. dismissed*, No. 97-9463, 1998 WL 313489 (U.S. July 17, 1998); **Muniz v. Johnson**, 132 F.3d 214 (5th Cir.), *cert. denied*, 118 S.Ct. 1793 (1998). The district court granted a COA for the following issues:

1. Whether Dunn was denied his fourteenth amendment right to due process because he was mentally incompetent to stand trial; and

2. Whether Dunn was denied his sixth amendment right to counsel because his waiver of the right was not knowingly and intelligently made.

[6]We granted a COA for the following issues:

1. Whether Dunn was denied due process of law in violation of the fourteenth amendment because he was deprived of a hearing on his mental competency to stand trial;

2. Whether Dunn was denied the assistance of counsel in violation of the sixth and fourteenth amendments when he was forced to represent himself as the only alternative to continuing with disqualified court-appointed counsel;

3. Whether Dunn was denied the assistance of counsel in violation of the sixth and fourteenth amendments because the trial court failed to conduct an adequate inquiry

4

# ANALYSIS

Dunn raises eight grounds for relief, all of which relate either to his competency to stand trial, the validity of his waiver of counsel, or the trial court's refusal to appoint a psychiatric expert to assist in the preparation of his case. In reviewing the grant of summary judgment in a habeas case, subject to certain exceptions, we must presume that the state court findings of fact are correct.[7]

A. Mental Competency

Dunn asserts that he was mentally incompetent to stand trial and that the trial court failed to conduct an adequate inquiry. Due process prohibits the prosecution of a defendant who is not competent to stand trial.[8] A defendant is deemed mentally competent when he has the "present ability to consult with his lawyer with a reasonable

---

regarding his objection that court-appointed counsel were disqualified;

    4. Whether Dunn was denied due process of law in violation of the fourteenth amendment because he was mentally incompetent to waive his right to counsel;

    5. Whether Dunn was denied due process of law in violation of the fourteenth amendment because the trial court failed to conduct an adequate inquiry into his mental competency to waive his right to counsel; and

    6. Whether Dunn was denied due process of law in violation of the fourteenth amendment because the trial court denied his motion for a psychiatric expert to assist him in preparing his defense.

    [7]28 U.S.C. § 2254(d) (1988); **Williams v. Scott**, 35 F.3d 159 (5th Cir. 1994).

    [8]**Cooper v. Oklahoma**, 517 U.S. 348 (1996); **Washington v. Johnson,** 90 F.3d 945 (5th Cir. 1996); **Bouchillon v. Collins**, 907 F.2d 589 (5th Cir. 1990).

degree of rational understanding" and "has a rational as well as factual understanding of the proceeding[] against him."[9]   Additionally, a trial court has a duty to hold a competency hearing when "the objective facts known to the trial court [are] sufficient to raise a bona fide doubt as to [the petitioner's] competency."[10]

Dunn contends that the trial court had an abundance of information which should have raised serious doubts about his competency and, as a result, the trial court was under a duty to hold a hearing to determine his competency.  In determining whether to grant a competency hearing, the trial court is to consider any history of irrational behavior, defendant's bearing and demeanor in court, and prior medical opinions.[11]

Dunn maintains that the trial records reflect that he had a delusional belief that all connected with his trial, particularly his attorneys, were involved in a conspiracy against him.  During the course of his two trials, both of which were before Judge Charles Hearn, Dunn claims that it should have been apparent that his hostility, distrust and suspiciousness were not matters of temperament but, rather, were the product of a disturbed mental condition.  Dunn's behavior during the first trial was so disruptive

---

[9]**Dusky v. United States**, 362 U.S. 402 (1996); **Lokos v. Capps**, 625 F.2d 1258, 1261 (5th Cir. 1980).

[10]**Enriquez v. Procunier**, 752 F.2d 111, 113 (5th Cir. 1984).

[11]**Thompson v. Blackburn**, 776 F.2d 118 (5th Cir. 1985).

that the court had him removed from the courtroom several times. Dunn often refused the advice of his standby counsel, and the prosecutor and standby counsel both requested competency hearings before his second trial.

The state habeas court, however, found that at no time did the trial court observe or become aware of any irrational behavior by Dunn sufficient to raise a bona fide doubt as to Dunn's competence. The trial court had the benefit of having observed Dunn's demeanor and behavior in the first trial; the report of Dr. Covert, which made a specific finding of competency to stand trial; the reports of Texas Correctional Officials who had observed Dunn over the course of several years; and observations of and interactions with Dunn throughout the course of the second trial. Dunn lobbied persistently and articulately to exercise his right to self-representation. The trial court also had the report of Dr. Covert which observed that Dunn was "familiar with legal terminology and [knew] the workings of the court system far better than the average individual." Dunn has failed to offer proof sufficient to rebut the state habeas court's finding that his demeanor and performance at his second trial demonstrated that he had a rational and factual understanding of the proceedings against him, and that he could have consulted with a lawyer with a reasonable degree of rational understanding.

To obtain habeas relief based on incompetency in fact, Dunn must show that the facts are "sufficient to positively, unequivocally and clearly generate a real, substantial

and legitimate doubt" as to his mental competency at the time of trial.[12] Dunn's evidence of incompetency includes the affidavits of Doctors Richard G. Dudley, J. Randall Price, and Jon Morton Aase.[13] Based on clinical interviews, psychological testing and a review of Dr. Covert's 1980 evaluation, Doctors Dudley and Price state that Dunn suffered from "paranoid delusional disorder" and "borderline personality disorder" during both trials which made him chronically paranoid, suspicious, and incapable of trust. Dr. Dudley concluded that Dunn's "Paranoid Delusional Disorder, with its persistent persecutory delusions, rendered [him] incompetent to stand trial in 1988." Likewise, Dr. Price concluded that Dunn's mental illnesses "rendered him incapable of consulting with an attorney."

Similarly, after reviewing Dunn's psychological, medical and prison records, and information concerning the alcohol intake of Dunn's natural mother during her pregnancy, Dr. Aase concluded that gestational alcohol exposure "resulted in significant and irreversible damage to [Dunn's] central nervous system." Dr. Aase concluded that Dunn's fetal alcohol effects and his psychiatric disorder substantially impaired his ability to consult with his attorneys.

---

[12]**Washington v. Johnson**, 90 F.3d 945, 950 (5th Cir. 1996); **Bruce v. Estelle**, 536 F.2d 1051, 1058-59 (5th Cir. 1976).

[13]The affidavits of all three doctors were procured in December 1992 for Dunn's state habeas proceeding.

As noted above, prior to his first trial Dunn was examined by Dr. Covert who presciently observed and concluded that Dunn "is able to confer with and cooperate with his defense attorneys and can be expected to do so unless he determines that by refusing to, or by being generally disruptive in the courtroom, he will inject uncertainties and confusion to the point that he might not be ultimately held accountable for his illegal acts."

The state habeas court entered findings of fact concluding that the affidavits offered by Dunn were not credible because they failed to acknowledge the difficulty of conducting a retrospective evaluation spanning several years, are either not based on an actual interview or did not recite the date of that interview, and conflicted with the findings of the mental health experts at the Texas Department of Criminal Justice, Institutional Division, who observed and examined Dunn on numerous occasions between 1980 and 1988. The state court found that Dr. Covert was neutral and that his evaluation was credible. Dunn has not offered any evidence to rebut the state court findings of fact; he has failed to persuade that he is entitled to relief based on incompetency.[14]

B. Waiver of the Right to Counsel

---

[14]The state court also found that Dunn was afforded the opportunity to factually develop his claim of incompetency.

Dunn asserts that his waiver of assistance of counsel was not knowing, intelligent, and voluntary; therefore his self-representation violated the sixth and fourteenth amendments. Specifically, he claims that his colloquy with the trial court concerning self-representation was constitutionally inadequate to support a knowing and intelligent waiver and that his election to proceed *pro se* was not voluntary because of a conflict of interest with his attorneys. Additionally, he contends that he was mentally incompetent to waive his right to counsel. These allegations do not provide a basis for habeas relief.

An "accused has a Sixth Amendment right to conduct his own defense, provided only that he knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol."[15] The defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with his eyes open.'"[16]

The record establishes that before the second trial Dunn was informed of his right to counsel and warned of the dangers and disadvantages of self-representation.

---

[15] **McCaskle v. Wiggins**, 465 U.S. 168, 173 (1984); see also **Faretta v. California**, 422 U.S. 806 (1975).

[16]**Faretta**, 422 U.S. at 835 (quoting **Adams v. United States ex rel. McCann**, 317 U.S. 269, 279 (1942)).

10

The trial court advised Dunn that it was not in his best interest to represent himself, that litigation of defenses and trial issues required a degree of skill and training not ordinarily possessed by lay persons, and that self-representation might prejudice his case to such an extent that an attorney might not be able to overcome the damage in the future. In addition, Dunn was specifically admonished that he would be expected to follow technical rules of procedure and evidence and that he would receive no special considerations because of his lack of legal ability and legal training. The court and counsel also questioned Dunn about the impending litigation. Dunn's responses reflect that he had a general knowledge of the order of the proceedings, how to conduct voir dire, how to do legal research, and how to prepare for trial. Further, he had the added experience of having experienced both the guilt/innocence and the punishment phases of his first trial.

Dunn next contends that he was forced to make the constitutionally repugnant choice between representation by disqualified court-appointed counsel and self-representation, making his waiver of the right to counsel involuntary. "A defendant's refusal without good cause to proceed with able appointed counsel constitutes a voluntary waiver of that right."[17] Dunn asserts that his counsel were disqualified because they had conflict of interests as a result of the malpractice suit he filed against

_____

[17]**Richardson v. Lucas**, 741 F.2d 753, 757 (5th Cir. 1984).

11

them, and because friction and animosity had occasioned a complete breakdown of communication. The record does not support Dunn's contention that a conflict or a complete breakdown in communications existed. Dunn's malpractice suit against Hunt and Guerrero had been dismissed as frivolous three years before his second trial and the pretrial record is replete with instances of Dunn conferring with counsel. We are persuaded that Hunt and Guerrero were not constitutionally inadequate and that the trial court did not have a duty to inquire any further into Dunn's objections.

Dunn also contends that he was not competent to waive the right to counsel. The level of competence required to waive the right to counsel is the same as that required to stand trial.[18] As we hold above, Dunn was competent to stand trial. It necessarily follows that he also was competent to waive the right to counsel.

C. Denial of Court-Appointed Psychiatrist

Dunn's final claim is that his right to a fair trial was violated because the court refused to appoint a psychiatrist to assist in preparing his case. Due process requires that the State "assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense" if the defendant makes a preliminary showing that his

---

[18]**Godinez v. Moran**, 509 U.S. 389 (1993).

sanity at the time of the offense is likely to be a significant factor at trial.[19]  Prior to

Dunn's first trial the trial court appointed Dr. Covert to evaluate Dunn to determine

whether he was sane at the time of the offense.  Dr. Covert concluded that Dunn "was

criminally responsible at the time of the robbery at the Alameda Bank during which he

killed a young woman."  Further, Dunn withdrew his notice of intent to claim insanity

prior to his second trial.  The state habeas court found that Dunn had failed to make a

preliminary showing that his sanity would be a significant factor at his second trial.

The trial court was not constitutionally required to appoint another psychiatrist to assist

Dunn.

The judgment appealed is AFFIRMED.

---

[19]**Ake v. Oklahoma**, 470 U.S. 68, 83 (1985).