United States Court of Appeals
Fifth Circuit

**F I L E D**

June 19, 2003

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**

**FIFTH CIRCUIT**

_____

No. 01-50347

_____

SCOTT LOUIS PANETTI,

Petitioner-Appellant,

versus

JANIE COCKRELL, Director, Texas Department of Criminal Justice, Institutional Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
For the Western District of Texas
USDC No. A-99-CV-260-SS

_____

Before HIGGINBOTHAM, EMILIO M. GARZA and STEWART, Circuit Judges.

PER CURIAM:[*]

Scott Louis Panetti ("Panetti"), a Texas inmate, has filed a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. Panetti was convicted in Texas state court of murdering his wife's

parents (Joe and Amanda Alvarado) and sentenced to the death penalty. Panetti's wife Sonja

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Alvarado ("Alvarado") and their three-year-old daughter witnessed the murders.

We consider the six claims on which the district court granted a certificate of appealability (COA) :[1] (1) whether Panetti was mentally competent to stand trial and whether the state trial court should have held an additional hearing to determine his competency; (2) whether Panetti was mentally competent to waive counsel and proceed with his defense *pro se*; (3) whether the state withheld exculpatory evidence relating to Panetti's mental illness in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (4) whether the state knowingly presented perjured testimony during Panetti's trial in violation of his fourteenth amendment right to due process; (5) whether the state coerced and manipulated a witness (Alvarado) in violation of Panetti's due process rights; and (6) whether the jury verdict was based on inaccurate information in violation of Panetti's due process rights.

In a habeas proceeding, we review the district court's findings of fact for clear error and its conclusions of law *de novo*. *Alexander v. Cockrell*, 294 F.3d 626, 628 (5th Cir. 2002). In this case, the district court dismissed all six of the above claims on the ground that Panetti failed to exhaust his state court remedies. The question of whether a habeas petitioner exhausted his state remedies is an issue of law, so we review the district court's determination *de novo*. *See Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

We have repeatedly made clear that a state prisoner must present his claims to a state tribunal, and thereby exhaust his state remedies, before filing a habeas petition in federal court. *Ogan v. Cockrell*, 297 F.3d 349, 356 (5th Cir. 2002). A habeas petitioner has failed to exhaust his state court remedies when he presents his claims to the federal court "in a significantly different and stronger

---

[1] The district court denied Panetti's request for a COA on seven other claims. In an earlier unpublished opinion, we affirmed that decision.

evidentiary posture than [they were] before the state courts." *Dowthitt v. Johnson*, 230 F.3d 733, 746 (5th Cir. 2000) (internal quotation marks omitted).

Our case law suggests that Panetti failed to exhaust the following four claims: (1) that the state withheld exculpatory evidence; (2) that the state knowingly presented perjured testimony; (3) that the state coerced and manipulated a witness (Alvarado); and (4) that the jury's verdict was based on inaccurate information. When Panetti presented these four claims to the federal habeas court, he relied heavily on a *signed* affidavit (and accompanying interview transcript) from Alvarado. However, Panetti did not present the same evidence to the state court. When Panetti filed his state habeas petition, he presented an *unsigned* affidavit from Alvarado supporting his claims. The state was able to cast doubt on the veracity of that unsigned affidavit by presenting the state habeas court with a signed affidavit that Alvarado prepared for the state (in which she refuted the claims she made in the unsigned affidavit). By contrast, the state did not present the federal habeas court with an affidavit from Alvarado casting doubt on the signed affidavit she prepared for Panetti.

Clearly, the signed affidavit that Panetti presented to the federal court constituted substantially stronger evidence than the unsigned affidavit he offered to the state court. As a result, Panetti's four claims, which rely heavily on the signed affidavit from Alvarado, were presented to the federal court in a "significantly different and stronger evidentiary posture" than in the state court. Therefore, we agree with the district court's conclusion that Panetti failed to exhaust those four claims in state court.

We do not, however, agree with the district court's determination that Panetti failed to exhaust his other two claims: (1) that he was incompetent to stand trial; and (2) that he was incompetent to waive counsel. Although Panetti relied in part on Alvarado's signed affidavit to

support his competency claims in federal court, the Alvarado affidavit was not the primary support for those claims. Panetti also relied on statements by psychiatrists, attorneys, and lay persons who observed Panetti at trial and concluded that he was not competent to stand trial or waive counsel. This evidence (or similar evidence) was presented to the state courts. Thus, we hold that Panetti exhausted his competency claims. *See Vasquez v. Hillery*, 474 U.S. 254, 257 (1986) ("[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied.") (internal quotation marks omitted).

Because Panetti's petition contains both exhausted and unexhausted claims, it might appear that we should dismiss the petition without prejudice to allow him to exhaust all of his claims. We have stated that "[a] habeas petition containing both exhausted and unexhausted claims is a 'mixed' petition which should be dismissed without prejudice." *See Alexander v. Johnson*, 163 F.3d 906, 908 (5th Cir. 1998). That rule (requiring the dismissal of a "mixed" petition) does not, however, apply when state procedural rules would prevent the petitioner from subsequently raising his unexhausted claims in state court. We have held that, if a petitioner's unexhausted claims would be procedurally barred under state law, we need not dismiss those claims without prejudice. *See Fuller v. Johnson*, 158 F.3d 903, 905-06 (5th Cir. 1998).

Panetti could not raise his unexhausted claims in a subsequent state habeas petition. He would be prevented from doing so by Texas's abuse of the writ doctrine. That doctrine "prohibits a second habeas petition, absent a showing of cause, if the applicant urges grounds therein that could have been, but were not, raised in his first habeas petition." *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (citing *Ex parte Barber*, 879 S.W.2d 889, 891 n.1 (Tex. Crim. App. 1994)); *see* TEX. CRIM. PROC. CODE ANN. art. 11.071 § 5(a).

Because the abuse of the writ doctrine would prevent Panetti from presenting his unexhausted claims in a subsequent state habeas petition, those claims appear to be procedurally defaulted for purposes of federal habeas review. *See Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).[2] Therefore, unless Panetti qualifies for an exception to our procedural default rules, those claims cannot provide a basis for federal habeas relief. *See Ogan*, 297 F.3d at 356.

A petitioner can overcome a procedural default only if he can (1) demonstrate cause for the default and (2) demonstrate actual prejudice resulting from the alleged violation of federal law. *Id.* Panetti appears to argue that prosecutorial misconduct prevented him from satisfying the exhaustion requirement and thereby "caused" his claims to be procedurally barred. He contends that he was unable to present a signed affidavit from Alvarado to the state court because the prosecution "interfere[d] with Alvarado by pressuring her not to sign her affidavit for [Panetti] and to sign an affidavit (which she now claims is false) for the state." Brief of Appellant at 40.

Panetti provides little evidence to support this claim of prosecutorial misconduct. He relies solely on Alvarado's signed federal affidavit (and accompanying interview transcript), asserting that, in the state habeas proceeding, the prosecution pressured Alvarado to sign an affidavit on behalf of the state. However, as the district court observed, Alvarado appears to lack credibility. As noted above, Alvarado has prepared conflicting (signed and unsigned) affidavits for the state and federal habeas courts. In light of this inconsistency, Alvarado's signed federal affidavit, standing alone, cannot support Panetti's allegation of prosecutorial misconduct. As a result, Panetti cannot show that prosecutorial misconduct was the cause of his failure to exhaust his state remedies. We therefore

---

[2] We have previously held that Texas's abuse of the writ doctrine constitutes an independent and adequate state law ground for procedural default under federal law. *See Fuller*, 158 F.3d at 906; *Nobles*, 127 F.3d at 423.

conclude that Panetti cannot take advantage of the cause/prejudice exception to our procedural default rules. We hold that four of Panetti's claims are procedurally defaulted.

As we noted above, because Panetti could not assert these four unexhausted claims in a subsequent state habeas petition, we need not dismiss his federal petition without prejudice. Instead, we can consider his exhausted claims on the merits. We therefore proceed to examine Panetti's competency claims.

The state appellate and habeas courts found that Panetti was competent to stand trial and to waive counsel. In a habeas proceeding, we accord significant weight to the state courts' determinations. We will not grant federal habeas relief unless the state courts' adjudication of Panetti's claims (1) "result ed in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2).

We have observed that "[d]ue process prohibits the prosecution of a defendant who is not competent to stand trial." *Dunn v. Johnson*, 162 F.3d 302, 305 (5th Cir. 1998). The Supreme Court has held that "the standard for competence to stand trial is whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). Panetti claims that his long history of mental illness (including schizo phrenia) as well as his behavior at trial demonstrate his incompetency. During the courtroom proceedings, Panetti would at times ramble or make seemingly irrelevant statements. Panetti claims that this behavior indicates that he did not

have a rational or factual understanding of the proceedings.

The state courts considered this evidence (*i.e.*, Panetti's history of mental illness, as well as his tendency to ramble and his proclivity for bizarre behavior), and nonetheless found that Panetti was competent to stand trial. Panetti's performance at trial supports the state courts' conclusion that he had a rational understanding of the proceedings against him and was able to assist in his own defense. At trial, Panetti asserted an insanity defense. In support of that defense, Panetti attempted to elicit testimony that his actions at the time of the murder were bizarre and unusual. Such testimony would help support an insanity defense. Panetti also attempted to cast doubt on the memory of Alvarado (the state's primary witness to the crime). Panetti suggested to Alvarado that, due to her shock at the time of the murder, she may not accurately remember the events surrounding the crime.

In light of the evidence that Panetti was able to formulate a trial strategy, we cannot say that the state courts' determination (that Panetti was competent to stand trial) was unreasonable. *See Dunn*, 162 F.3d at 305-06 (examining the claim of a petitioner who initially proceeded *pro se* and later claimed that he was incompetent to stand trial and waive counsel, and concluding that the petitioner's history of mental illness and delusional beliefs did not demonstrate that he was incompetent).

Panetti's claim that he was incompetent to stand trial also has a procedural component. Panetti claims that, in light of his irrational behavior at trial, the state trial court should have held an additional hearing to determine his competency. We have stated that "a trial court has a duty to hold a competency hearing when the objective facts known to the trial court [are] sufficient to raise a bona fide doubt as to [the petitioner's] competency." *Id.* at 305 (internal quotation marks omitted). In this case, the trial court held two competency hearings prior to Panetti's trial. In the second hearing, the

jury was presented with evidence that Panetti tended to ramble and otherwise act irrationally, and nonetheless found him competent to stand trial. No new indicia of incompetency surfaced during Panetti's trial. Therefore, the trial court did not have an obligation to hold another competency hearing.

Panetti also claims that he was not mentally competent to waive counsel and proceed with his defense *pro se*. The Supreme Court has made clear that a defendant's competency to waive counsel is judged by the same standard as his competency to stand trial. *Godinez*, 509 U.S. at 398. Because Panetti was competent to stand trial, it follows that he was also competent to waive counsel. *See Dunn*, 162 F.3d at 308.

However, determining that a petitioner was competent to waive counsel does not automatically end the inquiry. We must also examine whether Panetti's waiver of counsel was knowing and voluntary. *See Godinez*, 509 U.S. at 400. It seems clear that Panetti's waiver satisfies this additional requirement. When Panetti asked to proceed *pro se*, the state trial court informed Panetti of the ramifications of that decision. The court reminded Panetti that he was charged with capital murder; that he faced the death penalty; that it would be very difficult for a non-lawyer to try such a case; and told Panetti that the court would appoint counsel for him. Despite the warnings of the trial court, Panetti elected to proceed *pro se*. He has failed to demonstrate that his decision was involuntary or unknowing. *See Dunn*, 162 F.3d at 307 (refusing to find that the petitioner's waiver of counsel was not knowing and voluntary when the trial court had reminded the petitioner of "his right to counsel and warned of the dangers and disadvantages of self-representation").

We conclude that four of Panetti's claims are procedurally defaulted and that his two competency claims lack merit. Therefore, Panetti's habeas petition is DENIED.