**United States Court of Appeals**

**Fifth Circuit**

**F I L E D**

**July 20, 2005**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-70053

_____

THEODORE GOYNES,

Petitioner-Appellant,

versus

DOUG DRETKE, Director, Texas Department
of Criminal Justice, Institutions Division,

Respondent-Appellee.

Appeal from the U.S. District Court
Southern District of Texas
No. H-02-2665

Before JONES, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM[*]:

Petitioner Theodore Goynes ("Goynes") has already been
granted federal habeas relief on an <u>Penry</u> claim. In this appeal,
he seeks a Certificate of Appealability ("COA") from this court on
two issues relating to his conviction: (1) whether he was denied
due process of law, in violation of the Fifth and Fourteenth
Amendments, because he was mentally incompetent to stand trial; and
(2) whether he was denied due process of law, in violation of the
Fifth and Fourteenth Amendments, as a result of the trial court's

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this
opinion should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

failure to sua sponte hold a hearing to determine Goynes's competency to stand trial. Finding neither issue debatable, we affirm the district court and deny COA.

## BACKGROUND

There is no dispute about the facts of this case, the account of which we borrow heavily from the Texas Court of Criminal Appeals's ("CCA") unpublished decision, Goynes v. State, No. 71,387 (Tex. Crim. App., Dec. 14, 1994). On October 6, 1990, Linda Marie Tucker ("Tucker") left her workplace in northeast Houston, Texas, and stopped at a grocery store. As she exited the store, Goynes followed her. When Tucker opened her car door, Goynes shoved her into the car, pushed the front seat forward, and forced himself into the back seat. She briefly struggled, but was subdued once Goynes brandished a weapon. Goynes then held her with one arm, pointed the gun at Tucker's head with his other arm, and ordered her to drive away.

Tucker's family, who were waiting to surprise her at home for her birthday, learned that she had been abducted and began searching for her with police. Around 1:00 a.m. the next morning, a wrecker reported finding Tucker's car in an abandoned apartment complex. The police shortly thereafter discovered her body lying on a staircase with a single gunshot wound to the head.

Witnesses to the abduction identified Goynes as the man lingering outside the store and attacking Tucker. Other witnesses

2

confirmed that a man wearing a jacket bearing the name, "Forest Brook" was the attacker. Police obtained an arrest warrant for Goynes. When they arrived at Goynes's apartment, they did not find him, but did find a jacket matching the witnesses' description and a blood-stained rug. A more detailed search resulted in discovery of a box containing a pair of gloves, a revolver with six live rounds of ammunition, and a six-round "bullet holder" with five live rounds in the living room. The bullet taken from Tucker's head matched the weapon discovered at Goynes's home.

On October 9, 1990, police inadvertently discovered Goynes while responding to an unrelated disturbance call. After his arrest, Goynes confessed to the abduction and murder of Tucker.

Goynes was convicted of capital murder and sentenced to death for the kidnaping and murder of Tucker. He directly appealed his conviction and sentence to the CCA, which affirmed the conviction and sentence in an unpublished opinion filed December 14, 1994. The Supreme Court of the United States denied Goynes's petition for certiorari on June 26, 1995. Goynes v. Texas, 515 U.S. 1165, 115 S. Ct. 2625 (1995). Goynes then filed a state application for writ of habeas corpus in the trial court on October 24, 1997. The trial court subsequently entered findings of fact and conclusions of law recommending Goynes be denied relief. The CCA adopted the trial court's findings and conclusions, and denied relief on June 26, 2002. Ex parte Goynes, No. 52,487-01.

3

On July 15, 2002, Goynes filed a skeletal habeas petition in the district court with that court's permission. Goynes then filed a supplemental habeas petition on July 31, 2003. On November 30, 2004, the district court granted Goynes's petition based on a <u>Penry</u> claim and denied his petition and his COA request with regard to all other claims. The result of the district court's partial grant of relief, which the Director has not appealed, is that Goynes must be resentenced.[1] However, Goynes persists in his challenge to the underlying conviction itself. Thus, we must address whether a COA should issue, and an appeal on the merits be heard, on Goynes's two claims relating to his competence to stand trial.

## DISCUSSION

Goynes's § 2254 habeas petition, filed on July 15, 2002, is subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). <u>See</u> <u>Penry v. Johnson</u>, 532 U.S. 782, 792, 121 S. Ct. 1910, 1918 (2001). Under AEDPA, Goynes must obtain a COA before he can appeal the district court's denial of habeas relief. 28 U.S.C. § 2253(c)(1) (2000); <u>Slack v. McDaniel</u>, 529 U.S. 473, 478, 120 S. Ct. 1595, 1600 (2000). "[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of

---

[1] We granted the Director's unopposed motion to dismiss its appeal on the sentencing issue on February 3, 2005. <u>Goynes v. Dretke</u>, No. 05-70001 (5th Cir. Feb. 3, 2005).

4

appeals from habeas petitioners." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039 (2003).

To obtain a COA, Goynes must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2000); <u>Miller-El</u>, 537 U.S. at 336, 123 S. Ct. at 1039; <u>Slack</u>, 529 U.S. at 483, 120 S. Ct. at 1603. To make such a showing, he must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Miller-El</u>, 537 U.S. at 336, 123 S. Ct. at 1039 (quoting <u>Slack</u>, 529 U.S. at 484, 120 S. Ct. at 1603-04).

In <u>Miller-El</u>, the Supreme Court instructed, as it had previously held in <u>Slack</u>, that federal courts entertaining a COA application should "limit [their] examination to a threshold inquiry into the underlying merit of [the petitioner's] claims." <u>Miller-El</u>, 537 U.S. at 327, 123 S. Ct. at 1034. The Court observed that "a COA ruling is not the occasion for a ruling on the merit of petitioner's claim . . . ." <u>Id.</u> at 1036. Instead, our determination must be based on "an overview of the claims in the habeas petition and a general assessment of their merits." <u>Id.</u> at 1039. "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." <u>Id.</u> We do not have jurisdiction to justify the denial of a COA based on an adjudication of the actual merits of the claims. <u>Id.</u>

5

Accordingly, we cannot deny an "application for a COA merely because [we believe] the applicant will not demonstrate an entitlement to relief." Id. "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." Id.

Because the district court denied relief on the merits of the claims for which Goynes seeks a COA, he "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Barraza v. Cockrell, 330 F.3d 349, 351 (5th Cir. 2003) (quoting Miller-El, 537 U.S. at 338, 123 S. Ct. at 1040).

Goynes first seeks a COA on whether he was denied due process of law because he was mentally incompetent to stand trial. The Constitution prohibits trial and conviction of a defendant who is mentally incompetent to stand trial. See Cooper v. Oklahoma, 517 U.S. 348, 354, 116 S. Ct. 1373, 1376 (1996); Pate v. Robinson, 383 U.S. 375, 378, 86 S. Ct. 836, 839 (1966). There is a two part standard for ascertaining competence to stand trial: (1) whether the defendant has the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and (2) "whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402, 80 S. Ct. 788, 789 (1960). On habeas, a petitioner may collaterally attack his conviction by initially showing that "the

6

facts are sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt as to his mental competency at the time of trial." Dunn v. Johnson, 162 F.3d 302, 306 (5th Cir. 1998) (internal quotations omitted); Carter v. Johnson, 131 F.3d 452, 460 (5th Cir. 1997). This threshold burden is "extremely heavy." Johnson v. Estelle, 704 F.2d 232, 238 (5th Cir. 1983). Once the petitioner presents enough probative evidence to raise a substantial doubt as to his competency at the time of trial, he must then prove that incompetency by a preponderance of the evidence. Moody v. Johnson, 139 F.3d 477, 481 (5th Cir. 1998).

The district court's dismissal of this claim is not debatable. Despite a history of mental health problems and borderline intelligence, Goynes fails to make any initial showing that his competency was in doubt at the time of his trial. A psychiatric examination carried out at Vernon State Hospital found Goynes competent to stand trial. Goynes understood the charges against him, the facts underlying those charges, that he was on trial, and that he faced the death penalty. Goynes never sought a competency hearing at his trial. Additionally, four different experts evaluated Goynes's competency between his arrest and the trial, and all of them determined he was competent to stand trial. Goynes's strongest piece of evidence is that a psychologist retained by his trial lawyers, who reviewed only his medical history and never personally interviewed Goynes, stated that Goynes, "while competent to stand trial for a simple offense, may

7

not be competent to stand trial for a complicated offense." 8 RR 4 (emphasis added). Counsel for Goynes presented this information to the trial court, but even further qualified it by saying that he was unsure whether the defense could offer any substantive evidence of Goynes's incompetence. Thus, despite repeated opportunities to raise this issue at trial, to present evidence as to his competency, or to request further examination or a hearing, Goynes, through his counsel, failed to pursue a claim that he was incompetent to stand trial. Goynes bolsters his claim with numerous post-conviction affidavits, reports, and data, all of which indicate Goynes's difficulty in verbalizing and processing information. None of his information, however, contains a single expert opinion stating he is (or was) incompetent to stand trial. Contrary to Goynes's assumption, the presence of a mental defect does not demonstrate mental incompetence to stand trial. Cf. Bruce v. Estelle, 536 F.2d 1051, 1059 (5th Cir. 1976). Moreover, almost all of this new information is inapposite: Goynes's trial counsel, for example, did not submit any information about trouble working with Goynes or concerns over his ability to communicate with them during trial until six years after the fact. The proper inquiry for an incompetency claim is the petitioner's mental state at or near the time of trial. See, e.g., Martin v. Estelle, 583 F.2d 1373, 1374 (5th Cir. 1978). The evidence put forward by Goynes was properly rejected by the district court under the standards supplied by AEDPA, and jurists of reason could not find dismissal

8

of the incompetence claim debatable. Whether viewed in terms of the reasonableness of the state court's application of federal constitutional standards of competency or in terms of the adequacy and reasonableness of the state courts' factfinding, the rejection of Goynes's contention is not debatable.

Goynes also requests a COA on his claim that the trial court should have sua sponte granted him a competency hearing. The trial court is required to cease proceedings and hold a competency hearing, sua sponte if necessary, when a question arises at trial about the defendant's competency. Robinson, 383 U.S. at 385, 86 S. Ct. at 842. A procedural violation occurs if the trial court failed to conduct an inquiry into the defendant's mental competency when the evidence raised a bona fide doubt as to his competency at the time of trial. Id.; Carter v. Johnson, 131 F.3d 452, 459 n.10 (5th Cir. 1997). The legal question a reviewing court must ask is whether the trial judge received "information which, objectively considered, should reasonably have raised a doubt about a defendant's competency and alerted him to the possibility that the defendant could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense." Lokos v. Capps, 625 F.2d 1258, 1261 (5th Cir. 1980) (internal citations omitted).

Goynes points to no record evidence that would make the district court's dismissal of this claim debatable to a reasonable jurist. Trial testimony offered as to whether Goynes had the

9

ability to understand and waive his <u>Miranda</u> warnings did not relate to his competency to stand trial. Additionally, some of the <u>Miranda</u> testimony would have pointed the trial court in the opposite direction. Dr. Brown, for example, testified that Goynes had a mental illness and limited intellectual abilities, but he also stated that at a police interrogation, Goynes did not reveal the presence of any mental illness or impairment. Dr. Brown further testified that Goynes had the capacity to understand what was happening during the murder trial. Moreover, Goynes exhibited no erratic behavior during trial that would have indicated to the trial judge any change in his mental ability to continue to be tried. Goynes points to evidence of his mental problems, but, as previously stated, the presence of a mental defect does not demonstrate incompetence at the time of trial nor does it necessarily manifest such overt symptoms as to demand the trial court's convening of a hearing sua sponte. Goynes is thus unable to show that jurists of reason would find debatable the district court's denial of this claim.

For the foregoing reasons, the application for COA is **DENIED.**