# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 10, 2025

Lyle W. Cayce
Clerk

————————

No. 23-30683

————————

United States of America,

*Plaintiff—Appellee*,

*versus*

Louis Vernon Jackson,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:21-CR-155-7

_____

Before Higginbotham, Jones, and Southwick, *Circuit Judges*.
Patrick E. Higginbotham, *Circuit Judge*:

Defendant-Appellant Louis Vernon Jackson represented himself before and during his criminal trial, as was his right under the Sixth Amendment of our Constitution. Jackson argues that the district court erred when it failed to *sua sponte* conduct a competency hearing for him to proceed *pro se*. We see no error and AFFIRM.

No. 23-30683

I

A

Jackson's convictions are the direct result of two separate drug busts at Louisiana motels—one in April 2020 and one in May 2020.[1] In April, agents of the Natchitoches Multi-Jurisdictional Drug Task Force received a confidential informant's tip that Jackson and Candiace Bronson, a co-defendant, were selling drugs out of multiple rooms at the local Motel 6.[2] After surveilling the motel, officers conducted separate and simultaneous traffic stops of both Jackson and Bronson. The officers found two Motel 6 keys on Jackson's person, and soon after obtained a search warrant for Rooms 164 and 162.[3] Jackson was then arrested; in a post-arrest interview, he admitted to being aware of the rifle in Room 164. After obtaining a search warrant for Jackson's phone, officers discovered a trove of text messages discussing the sale of drugs with his customers. Soon after, Jackson bonded from state custody and resumed his illicit economic activities.

_____

[1] The first bust was at a Motel 6 in Natchitoches, Louisiana on April 16, 2020. The second bust was at a Best Western in Alexandria, Louisiana on May 13, 2020.

[2] The task force was comprised of officers from the Natchitoches Police Department, the Natchitoches Parish Sheriff's Office, and other agencies and municipalities.

[3] Officers first obtained a search warrant for Room 164, and while executing the warrant, noticed an internal connecting door to the neighboring Room 162. While sweeping the first room, officers heard a commotion in Room 162 and immediately applied for a second search warrant for the adjoining room. Three people were found to be "piled into the bathroom." In total, officers found a digital scale covered in methamphetamine residue, two methamphetamine smoking devices, and one methamphetamine pipe in Room 162. In Room 164, officers found another digital scale with methamphetamine residue, three grams of marijuana, 34 Tramadol pills, a Marlin .30-30 rifle, an SCCY 9mm handgun, 30 rounds of .40 caliber ammunition, two loaded 30-round 9mm magazines, plastic sandwich bags, and a plastic container covered in methamphetamine residue. Officers also found multiple documents and identification cards belonging to Jackson and Bronson.

No. 23-30683

Less than a month later, law enforcement received another tip that Jackson and Bronson were dealing drugs out of a Best Western in Alexandria, Louisiana—and that Savannah Weeks, an eventual co-defendant, was en route to retrieve methamphetamine from the duo. While conducting surveillance, officers observed Weeks pay Jackson a short visit. After her departure, officers conducted a traffic stop of Weeks and recovered 132.7 grams of methamphetamine from her car.[4] Officers then executed a search warrant on Jackson's hotel room and seized 498.2 grams of methamphetamine and $11,300 in cash.[5]

B

A grand jury in the Western District of Louisiana returned a nine-count indictment charging Jackson and six others with distinct drug and gun offenses.[6] Jackson himself faced five separate charges: conspiracy to distribute methamphetamine (Count 1); possession with intent to distribute Tramadol (Count 5); possession of firearms in furtherance of drug trafficking (Count 6); possession of a firearm by a convicted felon (Count 7); and possession with intent to distribute methamphetamine (Count 9).[7]

---

[4] After obtaining a search warrant for Weeks' phone, officers found evidence that she and her father, co-defendant James Weeks, were involved in drug dealing as well. Weeks later admitted to receiving the methamphetamine from Jackson and Bronson.

[5] Officers also recovered a digital scale, plastic sandwich bags, and Jackson's driver's license and debit cards.

[6] The grand jury indicted the seven Defendants on June 30, 2021.

[7] The relevant statutory provisions are as follows: 21 U.S.C. §§ 841(a)(1) and 846 (Count 1); 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Counts 5 and 9); 18 U.S.C. § 924(c)(1) (Count 6); and 18 U.S.C. § 922(g) (Count 7).

No. 23-30683

From the beginning, Jackson insisted on self-representation.[8] At Jackson's initial appearance and arraignment, the magistrate judge conducted a *Faretta* colloquy to ensure Jackson knowingly and voluntarily waived his right to counsel.[9] The magistrate judge confirmed that Jackson understood the charges and attendant penalties, that Jackson could read and write, and that Jackson had attended college for two years. In addition, the magistrate judge expounded on the "many dangers and disadvantages" of self-representation—including the loss of an appointed counsel's training and experience to craft a trial strategy, to select the jury, to draft jury instructions, and to preserve issues for appeal.[10]

A little over a week later, at Jackson's detention hearing, the magistrate judge reiterated in no uncertain terms the "many dangers and disadvantages" of self-representation. Once more, Jackson confirmed his decision to exercise his right to self-representation.

C

Prior to Jackson's four-day trial in April 2023, the district judge conducted another *Faretta* colloquy with Jackson to confirm his continued waiver of appointed counsel and intention to represent himself. The district judge inquired as to Jackson's educational background and emphasized the

_____

[8] Before his initial appearance and arraignment, Jackson requested an in-person hearing and informed the district court of his desire to represent himself.

[9] *See Faretta v. California*, 422 U.S. 806, 835-36 (1975) ("When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." (citing *Johnson v. Zerbst*, 304 U.S. 458, 464-465 (1938))).

[10] Furthermore, the magistrate judge underscored counsel's ability to perform their duties objectively, with "his or her emotions [] not get[ting] in the way of defending the case."

4

No. 23-30683

different sets of rules that would apply before and after his trial—including the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, and the Sentencing Guidelines.

The district judge broke down the basic structure of the trial, witness examinations, objections, the Government's burden of proof, and Jackson's Fifth Amendment privilege against self-incrimination. Finally, the district judge also ensured that Jackson had standby counsel, explained to him that the court could remove Jackson from self-representation if necessary, and clarified that standby counsel could not try portions of the case as long as Jackson maintained his *pro se* status.

A jury of Jackson's peers convicted him of Counts 1, 7, and 9— conspiracy to distribute and possession with intent to distribute methamphetamine paired with felon-in-possession—and acquitted him on Counts 5 and 6. The district court sentenced him to 360 months of imprisonment; Jackson timely appealed.[11]

## II

## A

"Due process prohibits the prosecution of a defendant who is not competent to stand trial."[12] "A defendant is deemed mentally competent when he has the 'present ability to consult with his lawyer with a reasonable

---

[11] With a criminal history category of VI, and a total offense level of 38, Jackson's calculated sentencing range was 360 months to life. USSG § 5A.

[12] *Dunn v. Johnson*, 162 F.3d 302, 305 (5th Cir. 1998) (citing *Cooper v. Oklahoma*, 517 U.S. 348 (1996)). *See also Medina v. California*, 505 U.S. 437, 448 (1992) ("If a defendant is incompetent, due process considerations require suspension of the criminal trial until such time, if any, that the defendant regains the capacity to participate in his defense and understand the proceedings against him." (citing to *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam))); *Pate v. Robinson*, 383 U.S. 375, 378 (1966).

No. 23-30683

degree of rational understanding' and 'has a rational as well as factual understanding of the proceedings against him.'"[13]

The Supreme Court recognized in *Indiana v. Edwards*, however, a higher threshold of competency for proceeding *pro se* at trial than for standing trial.[14] We noted that this "rule applies only in the 'exceptional' situation where a defendant is found competent to stand trial and elects to appear *pro se*, but is so severely mentally ill that his self-representation threatens an improper conviction or sentence."[15] "Even then, *Edwards* is permissive, *allowing* the state to insist on counsel, but not requiring that the state do so."[16]

B

We review a district court's determination of a defendant possessing competency for *pro se* representation for an abuse of discretion.[17] And, we review for an abuse of discretion whether a district court erred by not *sua sponte* holding a competency hearing for a defendant.[18]

---

[13] *Dunn*, 162 F.3d at 305 (quoting *Dusky*, 362 U.S. at 402).

[14] *See* 554 U.S. 164, 175-76 (2008) ("In certain instances, an individual may well be able to satisfy *Dusky*'s mental competence standard, for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel.").

[15] *Panetti v. Stephens*, 727 F.3d 398, 414 (5th Cir. 2013) (quoting *Edwards*, 554 U.S. at 176).

[16] *Id.*

[17] *United States v. Sterling*, 99 F.4th 783, 801 (5th Cir. 2024). *See also United States v. Berry*, 565 F.3d 385, 389 (7th Cir. 2009) ("The question for us is whether the verdict that came out of these proceedings must be vacated because the court should not have allowed Berry to represent himself. We review that decision for an abuse of discretion, keeping in mind the constitutional principles it implicates." (citations omitted)).

[18] *United States v. Ruston*, 565 F.3d 892, 901 (5th Cir. 2009).

No. 23-30683

## III

The right to self-representation reflects "a nearly universal conviction, on the part of our people as well as our courts, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so."[19] Exercising this right requires a defendant to waive his right to counsel, an explicit guarantee of the Sixth Amendment.[20] In doing so, he must "knowingly and intelligently" waive a lawyer's counsel and "be made aware of the dangers and disadvantages of self-representation[.]"[21] And, the record must "establish that 'he knows what he is doing and his choice is made with eyes open.'"[22]

Here, the record clearly establishes that Jackson knew what he was doing and that he elected to proceed *pro se* with eyes wide open. Not once—but twice—did the district court explain the difficulties of trial, warn against the dangers of self-representation, and confirm Jackson's waiver through a full-fledged *Faretta* colloquy. Sailing far above the bare minimum, the district court took care to remind Jackson of the complexities and pitfalls that are part and parcel of any criminal trial.

---

[19] *Faretta*, 422 U.S. at 817. *See also id.* at 821 (observing that "[i]n the long history of British criminal jurisprudence, there was only one tribunal that ever adopted a practice of forcing counsel upon an unwilling defendant in a criminal proceeding. The tribunal was the Star Chamber."); *Martinez v. Ct. App. of Cal., Fourth App. Dist.*, 528 U.S. 152, 165 (2000) (Scalia, J. concurring in judgment) ("That asserting the right of self-representation may often, or even usually, work to the defendant's disadvantage is no more remarkable—and no more a basis for withdrawing the right—than is the fact that proceeding without counsel in custodial interrogation, or confessing to the crime, usually works to the defendant's disadvantage.").

[20] U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."); *Faretta*, 422 U.S. at 835.

[21] *Id.* at 835.

[22] *Id.* (quoting *Adams v. United States ex rel McCann*, 317 U.S. 269, 279 (1942)).

No. 23-30683

A

Nevertheless, now Jackson contends that the district court abused its discretion when it did not *sua sponte* conduct a competency hearing prior to trial and asserts that his behavior before and during trial indicated "severe mental illness."[23] We disagree.

1

A district court "must conduct an inquiry into the defendant's mental capacity *sua sponte* if the evidence raises a bona fide doubt as to competency."[24] And, "[i]f the trial court received evidence, viewed objectively, that should have raised a reasonable doubt as to competency, yet failed to make further inquiry, the defendant has been denied a fair trial."[25] The trial court, however, is "often in the best position to judge the matter."[26]

The statutory requirements for a district court to hold a competency hearing are found in 18 U.S.C. § 4241(a), and are as follows:

> The court . . . shall order [] a [competency] hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

To determine if there is "reasonable cause" to doubt a defendant's competence, we consider: (1) any history of irrational behavior, (2) the

---

[23] *See Edwards*, 554 U.S. at 178.

[24] *Mata v. Johnson*, 210 F.3d 325, 329 (5th Cir. 2000).

[25] *Ruston*, 565 F.3d at 901 (citing *Mata*, 210 F.3d at 329).

[26] *Sterling*, 99 F.4th at 801 (citing *Edwards*, 554 U.S. at 177 ("[T]he trial judge . . . will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant.")).

No. 23-30683

defendant's demeanor at trial, and (3) any prior medical opinion of competency.[27]

2

Jackson argues that because he filed "erratic and incoherent" pre-trial motions—and made rambling and nonsensical remarks to the jury—that the district court was "on notice" of his incompetency for self-representation.[28] Jackson asserts that put together, these acts are indicia of his status as an inexperienced *pro se* defendant, and lead to the conclusion that he may have been better off accepting counsel.

We harbor no doubt that, with the benefit of an extensive legal education and training, Jackson could have made better and more persuasive arguments. This is precisely what the district court warned him of repeatedly before trial. Under *Edwards*, a district court is allowed—but certainly not required—to appoint counsel and thereby extinguish a defendant's right to self-representation.[29] The record does not paint the picture of a severely

_____

[27] *See United States v. Davis*, 61 F.3d 291, 304 (5th Cir. 1995).

[28] Most, if not all, of his pre-trial motions were based on existing legal principles, only misinterpreted. Furthermore, we DENY Jackson's motion to supplement the record on appeal with medical records from Natchitoches Behavioral Health Clinic, as we do "not ordinarily enlarge the record on appeal to include material not before the district court." *United States v. Randolph*, 103 F.4th 356, 362 (5th Cir. 2024) (citing *United States v. Flores*, 887 F.2d 543, 546 (5th Cir. 1989) (per curiam)). Under FED. R. EVID. 201(b), courts can take judicial notice of any fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." We decline to exercise our discretion to enlarge the record here. We are being asked to take judicial notice of records from nearly a decade ago, which show the Defendant received anti-depressant medications and counseling. Even if we did grant the motion, it would not alter our conclusions.

[29] *See* 554 U.S. at 178 ("That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* but

No. 23-30683

mentally ill defendant incapable of conducting his own defense.[30] Rather, it shows a persistent—and sometimes misguided—effort by Jackson that resulted in an acquittal by the jury on two of five counts.

Jackson had a cogent defense theory and sought to convince the jury that law enforcement had found him guilty through his close relation with Bronson—and that Weeks and Bronson were lying about his involvement for leniency. Despite his lack of legal knowledge and polish, Jackson's use of competing explanations and impeachment belies critical thinking and strategy, not incompetence. His partial acquittal only serves to buttress our conclusion that Jackson was far from incompetent to represent himself.[31]

* * *

At bottom, the requirements for occupying the liminal space *Edwards* creates—competent enough to stand trial, yet unable to perform the basic tasks necessary to present one's own defense—are "exceptional."[32]

---

who still suffer from severe mental illness to the point they are not competent to conduct trial proceedings by themselves.").

[30] *See also United States v. Rose*, 684 F. App'x 403, 404 (5th Cir. 2017) (concluding that, despite an obvious lack of legal knowledge and training, "because Rose clearly and unequivocally invoked his constitutional right to self-representation after extensive questioning, the district court had no choice but to allow him to proceed pro se as to do otherwise would have violated his Sixth Amendment rights."); *United States v. Johnson*, 610 F.3d 1138, 1140 (9th Cir. 2010) (rejecting an equivalence between nonsensical legal antics and incompetency as to self-representation and concluding that "the defendants are fools, but that is not the same as being incompetent.").

[31] A main pillar of Jackson's defense theory was that Bronson alone trafficked Tramadol pills, and that the handgun in the Motel 6 room was hers alone. As the Government correctly notes, these counts were premised on Bronson and Weeks' testimony. The jury, however, was not convinced when it came to the methamphetamine and felon-in-possession charges, which were supported by Jackson's personal text messages and officer testimony.

[32] *Panetti*, 727 F.3d at 414.

No. 23-30683

Jackson's case does not meet the mark. Finding no abuse of discretion by the district court, we AFFIRM.